THOMAS L. WALSH v. NATIONAL INDEMNITY COMPANY

No. 8525SC1237

(Filed 20 May 1986)

**Insurance § 100— injury not arising from maintenance of insured vehicle—no duty of insurer to defend**

An insurance policy issued by defendant requiring it to defend plaintiff in any action involving injury arising out of ownership or maintenance of the insured vehicle did not require defendant to defend plaintiff when tires of the insured vehicle were being hauled to a repair shop in a truck not owned by plaintiff, and the uninsured vehicle struck a person who brought a personal injury action against plaintiff, since there was no causal connection between the repair or maintenance of the tires and injury to the person who was struck.

APPEAL by plaintiff from *Wood, Judge.* Judgment entered 25 June 1985 in Superior Court, CALDWELL County. Heard in the Court of Appeals 14 March 1986.

*Wilson and Palmer by W. C. Palmer for plaintiff appellant.*

*Craighill, Rendleman, Ingle & Blythe by J. B. Craighill for defendant appellee.*

COZORT, Judge.

Plaintiff Thomas L. Walsh sued defendant National Indemnity Company for its failure to defend him in a prior action. At the

close of plaintiff's evidence the trial court granted defendant's motion for a directed verdict. Plaintiff appealed. We affirm, holding that defendant had no duty to defend plaintiff in the earlier action because the complaint in that action does not allege facts which arguably fall within the coverage of plaintiff's insurance policy with the defendant.

The essential, and undisputed facts relevant to this appeal are:

The defendant insurance company, National Indemnity, issued to the plaintiff a policy of "Basic Automobile Liability Insurance" covering a "1976 Peterbilt Tractor" and a "1976 Trailmobile S/Trailer" owned by the plaintiff, Thomas L. Walsh. The policy provided, in relevant part, the following coverage:

I. COVERAGE A—BODILY INJURY LIABILITY—

COVERAGE B—PROPERTY DAMAGE LIABILITY:

The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as damages because of

*bodily injury* or *property damage*

to which this insurance applies, caused by an *occurrence* and arising out of the ownership, maintenance or use, including loading and unloading, for the purposes stated as applicable thereto in the declarations, of an *owned automobile* or of a *temporary substitute automobile*, and the company shall have the right and duty to defend any suit against the *insured* seeking damages on account of such *bodily injury* or *property damage*, even if any of the allegations of the suit are groundless, false or fraudulent . . . . (Emphasis in original.)

In 1982 Jacob Amaro filed suit in Mecklenburg County Superior Court against George Thomas Walsh and Thomas L. Walsh (plaintiff here). The amended complaint alleged that an accident occurred on 6 September 1979 (during the policy period) when a 1967 Ford truck was negligently backed by George Thomas Walsh into Amaro, injuring him, at Gerrard Tire Company in Charlotte, North Carolina. Paragraph 3(a) of the amended complaint alleges that, at the time complained of, George Thomas Walsh

was acting as the agent, servant and employee of the Defend-
ant, Thomas L. Walsh, and the negligence of George Thomas
Walsh by virtue of such relationship became the negligence
of Thomas L. Walsh; that at the time of the said accident the
Defendant George Thomas Walsh was driving the said vehi-
cle on a mission for Thomas L. Walsh and transporting tires
owned by Thomas L. Walsh from Lenoir to Charlotte, North
Carolina, and that he was paid therefor by Thomas L. Walsh
and that the mission was solely for the benefit of Thomas L.
Walsh.

Although the Amaro complaint does not say so, it appears that
the tires in the Ford truck, at the time it was negligently backed
into Amaro, had been removed from the Peterbilt tractor covered
by National Indemnity's policy and were being hauled to Gerrard
Tire Company in Charlotte to have some "work" done on them.

Plaintiff here referred the Amaro complaint to National In-
demnity for defense. National Indemnity declined to provide a
defense, stating in a letter to Thomas Walsh that the accident in
question involved the operation of a 1967 Ford truck which was
not owned by plaintiff here and was not an insured vehicle under
the policy issued to plaintiff by National Indemnity.

On 26 July 1984 plaintiff filed suit against the defendant
seeking to recover damages for defendant's failure to defend him
in the Amaro case. Plaintiff demanded a jury trial. On 24 June
1985, at the close of plaintiff's evidence, the trial court granted
defendant's motion for a directed verdict.

On appeal plaintiff assigns as error the trial court's entry of
directed verdict in favor of defendant. Plaintiff contends that the
trial court erred in granting the directed verdict because the
facts surrounding the Amaro case show that appellant was a
named defendant in the Amaro suit wherein Amaro sought dam-
ages for bodily injuries resulting from an accident arising out of
the maintenance (taking the tires in for repair) of appellant's in-
sured Peterbilt tractor, and that under the plain language of the
policy, National Indemnity had a duty to defend any suit against
appellant seeking damages for bodily injuries caused by an acci-
dent arising out of the maintenance of plaintiff's vehicle. We
disagree with plaintiff's argument.

The scope of an insurer's duty to defend an insured was summarized by the North Carolina Supreme Court in *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691-92, 340 S.E. 2d 374, 377-78 (1986):

> Generally speaking, the insurer's duty to defend the insured is broader than its obligation to pay damages incurred by events covered by a particular policy. An insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings; its duty to pay is measured by the facts ultimately determined at trial. When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable. *Strickland v. Hughes*, 273 N.C. 481, 487, 160 S.E. 2d 313, 318 (1968); 7C J. Appleman, *Insurance Law and Practice* Sec. 4683 (1979 & Supp. 1984). (Footnote omitted.) Conversely, when the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend.
>
> Where the insurer knows or could reasonably ascertain facts that, if proven, would be covered by its policy, the duty to defend is not dismissed because the facts.alleged in a third-party complaint appear to be outside coverage, or within a policy exception to coverage. 7C J. Appleman, *Insurance Law and Practice* Sec. 4683. . . . In addition, many jurisdictions have recognized that the modern acceptance of notice pleading and of the plasticity of pleadings in general imposes upon the insurer a duty to investigate and evaluate facts expressed or implied in the third-party complaint as well as facts learned from the insured and from other sources. Even though the insurer is bound by the policy to defend "groundless, false or fraudulent" lawsuits filed against the insured, if the facts are not even arguably covered by the policy, then the insurer has no duty to defend. *See generally* 14 Couch on Insurance 2d Sec. 51:46 (rev. ed. 1982); 7C J. Appleman, *Insurance Law and Practice* Sec. 4684.01.

Thus our inquiry is whether the Amaro pleadings state facts demonstrating that the alleged injury suffered by Amaro is arguably covered by the policy. Here the parties agree that the

crucial question in this inquiry is whether the accident as alleged is an accident "arising out of the . . . maintenance" of the Peterbilt tractor.

The construction and application of the policy provisions to the undisputed facts is a question of law for the court. *Waste Management of Carolinas, Inc. v. Peerless Ins. Co., supra; Parker v. State Capital Life Ins. Co.*, 259 N.C. 115, 130 S.E. 2d 36 (1963). If the facts as alleged do not arguably fall within the "maintenance" provision of the policy, the defendant had no duty to defend, and the directed verdict was properly granted.

The phrase "arising out of" and the word "maintenance" are not defined in the policy. These terms, in the context in which they are used in the insurance policy, have been judicially construed. In *Fidelity & Casualty Co. of New York v. North Carolina Farm Bureau Mutual Ins. Co.*, 16 N.C. App. 194, 198-99, 192 S.E. 2d 113, 118, *cert. denied*, 282 N.C. 425, 192 S.E. 2d 840 (1972), we stated that

> [t]he words "arising out of" are not words of narrow and specific limitation but are broad, general, and comprehensive terms effecting broad coverage. They are intended to, and do, afford protection to the insured against liability imposed upon him for all damages caused by acts done in connection with or arising out of such [maintenance]. They are words of much broader significance than "caused by." They are ordinarily understood to mean "originating from," "having its origin in," "growing out of," or "flowing from," or in short, "incident to," or "having connection with" the [maintenance] of the automobile. (Citations omitted.) . . . .

> The parties do not, however, contemplate a general liability insurance contract. There must be a causal connection between the [maintenance] and the injury. This causal connection may be shown to be an injury which is the natural and reasonable incident or consequence of the [maintenance], though not foreseen or expected, but the injury cannot be said to arise out of the [maintenance] of an automobile if it was directly caused by some independent act or intervening cause wholly disassociated from, independent of, and remote from the [maintenance] of the automobile. (Citation omitted.)

Our research has uncovered no cases in North Carolina ruling on whether a given factual situation as alleged in a third-party complaint invoked an insurance company's duty to defend the insured under the policy's coverage for injury "arising out of the . . . maintenance" of the insured vehicle. Furthermore, we found only one North Carolina case which determined whether a specific factual situation came within the policy's coverage for injuries arising out of the maintenance or repair of a motor vehicle, not the company's duty to defend the insured. In *Williams v. Nationwide Mutual Insurance Co.*, 269 N.C. 235, 152 S.E. 2d 102 (1967), the plaintiff was injured while making repairs underneath an uninsured vehicle raised on blocks when the owner of the vehicle removed a front wheel causing the car to fall or roll onto the plaintiff. The court quoted with approval from the opinion by the Supreme Court of Pennsylvania, in *Morris v. American Liability & Surety Co.*, 322 Pa. 91, 94, 185 A. 201, 202 (1936), defining "maintenance" as follows:

> The word "maintenance" used in this policy covers all acts which come within its ordinary scope and meaning. To maintain means to preserve or keep in an existing state or condition and embraces acts of repair and other acts to prevent a decline, lapse or cessation from that state or condition. . . . In a wide variety of situations the word "maintain" has been taken to be synonymous with "repair" . . . . Here the act which gave rise to the injury for which a judgment was recovered took place while an employee of the assured was in the act of repairing an essential part of the car and, under the circumstances, was expressly within the term of the policy specified as "maintenance."

Our Court held in *Williams* that, giving "maintenance" its common, daily, nontechnical meaning, the facts as alleged by plaintiff came within the coverage of the policy.

Thus our question is whether the facts as alleged by Amaro in his complaint against Thomas L. Walsh arguably come within National Indemnity's policy to provide coverage for injuries arising out of the maintenance of Walsh's vehicle. If so, then defendant had a duty to defend plaintiff in the Amaro suit. Giving the allegations of the Amaro pleadings a liberal interpretation, we hold the facts alleged do not arguably come within the policy's

coverage because there is no causal connection between the repair or maintenance of the tires and the injury to Amaro. The tires were not being repaired at the time the accident occurred. They had been placed in the back of the Ford truck and were being hauled to the tire company for repair when the accident occurred.

Plaintiff appellant argues that the injury to Amaro as alleged in his complaint

> was *connected* to the maintenance of the vehicle at least from Appellant's standpoint as it was his only possible link to the accident.
>
> * * * *
>
> [T]he only possible nexus between Appellant and the accident that occurred in Charlotte was the fact that the [driver of the Ford truck] . . . was employed by Appellant. This employment was related solely to necessary maintenance of Appellant's insured vehicle. (Emphasis plaintiff's.)

Plaintiff appellant's argument is essentially a "but for" argument, *i.e.*, "but for" the tires needing repair they would not have been transported in the Ford truck to Gerrard Tire Company and the accident and injuries to Amaro would not have occurred. This Court has previously rejected the "but for" argument, in construing policy coverage clauses, as being too broad, beyond the contemplation of the parties. *See Nationwide Mutual Ins. Co. v. Knight*, 34 N.C. App. 96, 100, 237 S.E. 2d 341, 345, *disc. review denied*, 293 N.C. 589, 239 S.E. 2d 263 (1977).

In summary, we hold that the complaint in the Amaro case does not allege facts which arguably come within the coverage of the insurance policy; thus, the trial court properly granted a directed verdict for the insurance company.

Affirmed.

Judge BECTON concurs.

Judge PHILLIPS concurs in result.