ROYAL INSURANCE COMPANY OF AMERICA, Plaintiff v. THE CATO CORPORATION, Defendant

No. COA96-545

(Filed 4 March 1997)

**Insurance § 668 (NCI4th)— claim against insured—declaratory judgment—default judgment—failure to notify—insurance**

The trial court did not err in granting summary judgment for plaintiff insurance company in a declaratory judgment action arising from a false imprisonment and malicious prosecution claim when plaintiff refused to indemnify defendant for a default judgment because defendant failed to timely notify plaintiff of the

claim. A "knowledge of occurrence" provision in the policy which designated plaintiff's insurance department and executive officers as the persons whose knowledge triggers a duty to report occurrences only addresses the duty to provide notice of "occurrences" and is separate and distinct from the duty to "immediately send" suit papers to plaintiff. It is clear that defendant did not comply with the requirement to "immediately send" legal papers by sending the papers to plaintiff three months after service. Moreover, plaintiff was materially prejudiced by that failure because a default judgment had already been entered and plaintiff was deprived of the opportunity to investigate or defend the claim. Moreover, defendant's delay in providing plaintiff with the legal papers eliminated any obligation under the policy to provide a defense.

**Am Jur 2d, Automobile Insurance §§ 414 et seq.**

**Modern status of rules requiring liability insurer to show prejudice to escape liability because of insured's failure or delay in giving notice of accident or claim, or in forwarding suit papers. 32 ALR4th 141.**

Appeal by defendant from order and judgment entered 30 November 1995 by Judge John M. Gardner in Mecklenburg County Superior Court. Heard in the Court of Appeals 28 January 1997.

*Smith, Helms, Mulliss & Moore, L.L.P., by Douglas W. Ey, Jr., and Leigh F. Moran, for plaintiff-appellee.*

*McCalla, Raymer, Padrick, Cobb, Nichols & Clark, by Carol V. Clark, and J. Gregory Fagan, for defendant-appellant.*

MARTIN, John C., Judge.

Plaintiff Royal Insurance Company of America (Royal) brought this action seeking a declaration of its rights and obligations under a commercial general liability insurance policy (the Policy) issued to defendant Cato Corporation (Cato). The dispute arises out of the following factual background:

In January of 1993, Zenobia Hurt was charged, arrested, and jailed as a result of allegations of theft lodged against her by a manager of a Cato retail store in Bluefield, Virginia. The charges were subsequently dismissed. On 24 September 1993, Ms. Hurt filed an action against Cato in the Circuit Court for Tazewell County, Virginia,

alleging false imprisonment and malicious prosecution (the *Hurt* suit). Cato's Regional Vice President and duly-appointed registered agent for service of process was properly served with summons and a copy of the complaint in the *Hurt* suit on 28 September 1993. Defendant Cato did not file an answer to the *Hurt* complaint, and, on 24 November 1993, the trial court entered a default judgment in favor of Ms. Hurt in the amount of $500,000.

On 28 December 1993, Ms. Hurt's attorney in Virginia transmitted a copy of the court order and judgment in the *Hurt* suit to Cato's President in Charlotte, North Carolina. Ms. Hurt's attorney also informed Cato's Chief Financial Officer that the sheriff had seized Cato's Bluefield, Virginia store to satisfy the default judgment. Cato's Chief Financial Officer delivered a copy of the *Hurt* judgment to the Director of Risk Management of Cato's Insurance Department, who in turn, notified Royal of the *Hurt* suit for the first time. Cato unsuccessfully sought an injunction to stay execution to satisfy Ms. Hurt's judgment, and Cato subsequently paid Ms. Hurt $425,000 in settlement to satisfy the judgment.

On 29 December 1993, Royal received a General Liability Notice of Occurrence/Claim under the Policy from Cato, as well as a copy of the *Hurt* judgment, but did not receive a copy of the *Hurt* complaint until the next day. On 30 December 1993, Royal made a preliminary determination to deny coverage based on Cato's failure to meet the notice requirements of the Policy. Royal subsequently declined coverage by letter to Cato dated 28 February 1994 on the grounds that Cato had failed to "give Royal notice of the *Hurt* suit as soon as practicable and to forward the summons and complaint to Royal immediately" pursuant to Section IV, Paragraph 2 of the Policy. After Cato threatened to file suit, Royal filed this action seeking a determination of its obligation to indemnify Cato under the Policy. Cato answered and filed a counterclaim alleging claims for Royal's breach of the policy and refusal to pay the judgment, failure to defend, breach of duty of fair dealing, and bad faith refusal to pay Cato's claim under the policy.

After discovery, both parties moved for summary judgment. The trial court granted Royal's motion for summary judgment finding "no genuine issue as to any material fact concerning Royal's claim for declaratory judgment or concerning CATO's counterclaims for damages, and that Royal is entitled to entry of judgment as a matter of law on both its claim for declaratory judgment and CATO's counterclaims for damages." Defendant Cato appeals.

**ROYAL INS. COMPANY OF AMERICA v. CATO CORP.**

[125 N.C. App. 544 (1997)]

The rules with respect to summary judgment are well-established. When considering a motion for summary judgment, the trial court is required to view the pleadings, affidavits and discovery materials in the light most favorable to the non-moving party to determine whether any genuine issues of material fact exist and, if there are none, whether the moving party is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56 (1990); *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 414 S.E.2d 339 (1992). Summary judgment is a proper procedure in a declaratory judgment action when there are no disputed issues of fact. *Hendrickson v. Lee*, 119 N.C. App. 444, 459 S.E.2d 275 (1995).

Cato argues that the "Knowledge of Occurrence" provision of Endorsement A to the Policy modifies Section IV, Paragraph 2, and requires that an executive officer or the insurance department of Cato must receive written notice of a claim before it is "knowledge" for purposes of requiring Cato to notify Royal. Cato further argues that it timely notified Royal of the *Hurt* claim on 28 December 1993, the same day an executive officer of Cato received written notice of the *Hurt* judgment. On the other hand, Royal argues that the "Knowledge of Occurrence" endorsement has no effect on Section IV, Paragraph 2, and that under Condition 2(c) Cato had an obligation to "immediately send" suit papers to Royal. Thus, it argues, Cato's failure to do so was a breach of Cato's obligation under the Policy and relieves Royal of its obligation to indemnify Cato for its liability to Ms. Hurt.

Royal's complaint for declaratory judgment and the first claim in Cato's counterclaim, alleging Royal's breach of contract, present the same legal issues concerning the construction and interpretation of the Policy language. The determinative issue is whether the "Knowledge of Occurrence" endorsement modifies the notice requirements in Section IV, Condition 2(c) of the Policy.

Section IV entitled "Commercial General Liability Conditions" provides:

2. Duties In The Event Of Occurrence, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim . . . .

. . .

b. If a claim is made or "suit" is brought against any insured, you must:

    (1) Immediately record the specifics of the claim or "suit" and the date received; and

    (2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. <u>You and any other involved insured must</u>:

    (1) <u>Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"</u> (emphasis added).

. . .

Endorsement Changes of the Policy provides:

<u>ENDORSEMENT A</u>

. . .

<u>KNOWLEDGE OF OCCURRENCE</u>

IT IS UNDERSTOOD AND AGREED THAT KNOWLEDGE OF AN OCCURRENCE BY THE AGENT, SERVANT OR EMPLOYEE OF THE INSURED, SHALL NOT IN ITSELF CONSTITUTE KNOWL-EDGE BY THE INSURED UNLESS AN EXECUTIVE OFFICER OR THE INSURANCE DEPARTMENT OF THE INSURED COR-PORATION SHALL HAVE RECEIVED WRITTEN NOTICE OF SUCH CLAIM FROM THE AGENT, SERVANT OR EMPLOYEE.

. . .

The construction of insurance policy provisions and the meaning of policy language is a question of law for the court to decide. *U.S. Fidelity & Guaranty Co. v. Country Club of Johnston County*, 119 N.C. App. 365, 458 S.E.2d 734, *disc. review denied*, 341 N.C. 656, 462 S.E.2d 527 (1995).

We reject Cato's argument that the "Knowledge of Occurrence" endorsement modifies Section IV, Condition 2(c) such that Cato had no duty to send Royal the *Hurt* legal papers until an executive officer or the insurance department had the written materials in hand. By its terms, the "Knowledge of Occurrence" provision only addresses Cato's duty to provide notice with respect to underlying "occur-

ROYAL INS. COMPANY OF AMERICA v. CATO CORP.

[125 N.C. App. 544 (1997)]

rences," and designates the insurance department and executive officers as the persons whose knowledge triggers a duty to report "occurrences." The provision makes no reference to Cato's obligation to "immediately send" suit papers pursuant to Condition 2(c), which is separate and distinct from Cato's duty under the Policy to notify Royal of an occurrence, offense or claim. Accordingly, we conclude that the "Knowledge of Occurrence" endorsement does not modify Section IV, Condition 2(c).

Having determined that Condition 2(c) is not modified, we now turn to the questions of whether Cato complied with Condition 2(c), and if not, whether Royal had a duty to indemnify Cato as a matter of law.

> Notice provisions in insurance contracts have long been recognized as valid in North Carolina. "The purpose and intention of an insurance contract's notice provision is to enable the insurer to begin its investigation and to initiate other procedures as soon as possible after a claim arises, and to avoid any prejudice that might be caused by a delay in receiving notice."

*South Carolina Ins. Co. v. Hallmark Enterprises*, 88 N.C. App. 642, 645-46, 364 S.E.2d 678, 680, *disc. review denied*, 322 N.C. 482, 370 S.E.2d 228 (1988) (citations omitted). "[U]nless the insured or his judgment creditor can show compliance with the requirement, the insurer is relieved of liability." *Davenport v. Indemnity Co.*, 283 N.C. 234, 238, 195 S.E.2d 529, 532 (1973).

Section IV, Condition 2(c), required Cato to "immediately send" Royal copies of any legal papers received in connection with a claim or suit to Royal. On 28 September 1993, Cato's duly appointed registered agent for service of process was properly served with the *Hurt* summons and complaint. Cato, however, did not notify Royal of the *Hurt* suit until 28 December 1993. It is clear that by sending the *Hurt* legal papers to Royal three months after Cato was served, Cato did not comply with the requirement of Condition 2(c) to "immediately send" legal papers. Moreover, Royal was materially prejudiced by Cato's failure to "immediately send" the *Hurt* legal papers. By the time Cato notified Royal about the *Hurt* suit, a default judgment in favor of Ms. Hurt had already been entered against Cato. As a result, Royal was deprived of an opportunity to investigate or defend the *Hurt* claim. Accordingly, we conclude as a matter of law that Royal had no duty to indemnify Cato for the money it paid to settle the *Hurt* judgment.

ROYAL INS. COMPANY OF AMERICA v. CATO CORP.

[125 N.C. App. 544 (1997)]

We must next determine, pursuant to count two of Cato's counterclaim, whether Royal "further breached its obligations under the policy by failing to take any action to litigate the *Hurt* default and by failing to defend the *Hurt* action by seeking injunctive or other relief to set aside the judgment" as a matter of law.

Generally, an insurer's duty to defend the insured is broader than its obligation to pay damages. *Walsh v. National Indemnity Co.*, 80 N.C. App. 643, 343 S.E.2d 430 (1986). An insurer's duty to defend is triggered by the allegations of the complaint against its insured, and where it appears that there may be coverage for claims asserted in the complaint, the insurer has a duty to defend, whether or not the insured is ultimately liable. *Id.*

In order to begin to satisfy its duty to defend a suit against the insured, Royal not only must have notice that the suit has been filed pursuant to Condition 2(b), but it must also have copies of the suit papers and the time-critical information that they contain about the case as provided for in Condition 2(c). As stated above, Cato did not notify Royal of the *Hurt* suit until more than a month after a default judgment had been entered in favor of Ms. Hurt, and after the time to appeal the default judgment had expired. Moreover, by the time Royal received the actual *Hurt* complaint, Cato's motion to set aside the default judgment had been denied by the Virginia court. Thus, we hold, as a matter of law, that Cato's delay in providing Royal with the *Hurt* legal papers eliminated any obligation under the Policy to provide Cato a defense to the *Hurt* action.

Because we conclude as a matter of law that the "Knowledge of Occurrence" endorsement did not relieve Cato of its duty to "immediately send" the *Hurt* legal papers pursuant to Condition 2(c), that Cato did not comply with Condition 2(c), and that Royal had no duty to indemnify or to defend Cato, Cato's counterclaims for breach of fair dealing, bad faith, punitive damages, and attorneys' fees are without merit. Accordingly, we affirm the entry of summary judgment in Royal's favor.

Affirmed.

Judges EAGLES and GREENE concur.