Raul G. LOZADA, Plaintiff,

v.

THE PHOENIX INSURANCE COMPANY, Defendant.

No. 1:00–CV–1158.

United States District Court,
M.D. North Carolina.

Jan. 2, 2003.

W. Benjamin Smith, Richard L. Anderson, Price Smith Hargett Petho & Anderson, Charlotte, NC, for plaintiff.

Robert Scott Brown, Michael W. Washburn, Brown Crump Vanore & Tierney, L.L.P., Raleigh, NC, for defendant.

## MEMORANDUM OPINION

BEATY, District Judge.

## I. INTRODUCTION

This matter comes before the Court on Plaintiff Raul G. Lozada's Motion for Sum-

mary Judgment [Document # 15] and Defendant Phoenix Insurance Company's Motion for Partial Summary Judgment [Document # 18]. For the reasons that follow, Plaintiff's Motion for Summary Judgment shall be GRANTED in part and DENIED in part. With respect to the separate issue of Plaintiff's claim of unfair and deceptive trade practices, Defendant's Motion for Partial Summary Judgment shall also be GRANTED.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On August 13, 1999, Raul G. Lozada ("Plaintiff") was involved in an automobile collision while operating his vehicle. The collision occurred when an automobile operated by Phillip Anthony Prince ("Prince") approached from the opposite direction of travel from Plaintiff, swerved over the center line and struck Plaintiff's vehicle. (Compl.¶ 5.) Plaintiff suffered severe injuries and incurred medical expenses of over one hundred fifty thousand dollars ($150,000) as a result of the collision. (Pl.'s Br. In Sup. of Mot. for Sum. Judg., at 2.)

The vehicle operated by Prince was not owned by him. The facts are not clear, but the car was owned either by an individual named Angela Terry or by her sister Toinette Terry, neither of whom is otherwise involved in this litigation. Notably, the vehicle driven by Prince did not carry liability insurance coverage. (Compl.¶ 8.) A review of the investigation report by the North Carolina Highway Patrol revealed that on August 13, 1999, the date of the collision, Prince listed his residence as 11060 Barnes Bridge Road, Laurinburg, North Carolina. (Pl.'s Br. In Sup. of Mot. for Sum. Judg., at 9.) The investigation also revealed that Prince lived at that address with his mother, Lee Doris David. (*Id.*) Ms. David owned an automobile insured by the Phoenix Insurance Company ("Defendant"). (*Id.* at

¶ 10.) Plaintiff contends that the policy issued by Defendant to Ms. David provided liability insurance coverage applicable to Plaintiff's claim against Prince because Prince is both a relative of Ms. David and a resident of her household. (*Id.* at ¶ 11.)

Plaintiff's counsel contacted Defendant via letters dated March 15, 2000, and March 21, 2000, to inform Defendant that Plaintiff was making a claim against Prince and that Plaintiff believed Prince was covered under Ms. David's policy. (Def.'s Memo. of Law In Opp. to Pl.'s Mot. for Sum. Judg., Exh. D and Exh. F). Specifically, in the letter of March 15, 2000 to Defendant's agent, Plaintiff identified the particular policy issued to Ms. David, that is policy # 940444863–101–1, which he contended provided coverage for Prince's negligent actions in this matter. Plaintiff informed Defendant that "Phillip Anthony Prince is the son of your insured, Lee Doris David, who is insured under the above referenced policy number. Further, Mr. Prince resided in the same household as your insured on the date of this accident. As such, a policy of insurance in effect with your company would provide liability coverage applicable to this accident."

Plaintiff had previously advised Defendant's agent that the 1997 Dodge Prince was driving at the time of the accident did not have insurance coverage since it had expired, apparently, in August 1998. Plaintiff further noted in a March 21, 2000 letter to Defendant that Prince took a license tag from a 1987 Ford Mustang jointly owned by Prince and his mother, Ms. David, and switched it to the 1997 Dodge that he was driving on the date of the accident. As it turned out, the insurance on the 1987 Ford Mustang had expired on July 31, 1999, but while in effect, the insurance policy for the 1987 Ford Mustang also listed Prince's address as

11060 Barnes Bridge Road. Importantly here, Plaintiff in this letter of March 21, 2000, advised Defendant that "[a]s such, I believe it is quite clear from our telephone conversations, as well as the police report and insurance documentation that Phillip Prince was living with his mother, your insured, on the date of this accident."

Defendant notified Ms. David on March 29, 2000 that a loss claim had been filed by Plaintiff related to the accident on August 13, 1999 involving Phillip Prince. In a subsequent letter to Plaintiff on April 25, 2000, Defendant advised Plaintiff's attorney that they were denying coverage on Plaintiff's claim based upon their finding that Prince did not fit the legal requirements of a "resident" of Ms. David's household. Also on April 25, 2000, Defendant mailed a letter to Ms. David, with copies of the letter for her to provide to Prince, indicating that Defendant had rendered a decision to deny Plaintiff's claim. In that same letter, Defendant alerted Ms. David of the possibility that Plaintiff may file a lawsuit directly against her involving the accident.

No lawsuit was filed directly against Ms. David. However, on May 1, 2000, based upon the information known to Plaintiff's attorney, a lawsuit was filed against Prince in North Carolina Superior Court, Scotland County. Prince was served with a copy of the Complaint in that action on May 5, 2000 and Defendant was mailed a copy of the Complaint on May 9, 2000. Plaintiff, thereafter, sent a second copy of the Complaint to Defendant by way of Certified Mail on June 8, 2000. (Def.'s Memo. of Law In Opp. to Pl.'s Mot. for Sum. Judg., Exh. C; Matre Depo. Exh. # 8). Prince failed to answer the Complaint in the time allotted by law and Defendant provided no defense on Prince's

behalf. As a result, an Entry of Default was entered against Prince on July 13, 2000. Subsequently, on September 11, 2000, a Default Judgment was entered in favor of Plaintiff and against Prince in the amount of five hundred thousand dollars ($500,000). (Compl. at ¶ 7.)

Following the default judgment against Prince, Plaintiff instituted this action by filing suit against Defendant in Scotland County Superior Court on September 29, 2000. Plaintiff's suit against Defendant demands recovery for the judgment entered against Prince, as well as costs and attorney's fees associated with bringing this action.[1] Defendant removed the lawsuit to this Court on November 15, 2000, pursuant to 28 U.S.C. § 1332, on the basis of diversity jurisdiction. This matter is currently before the Court on Plaintiff's Motion for Summary Judgment and Defendant's Motion for Partial Summary Judgment as to Plaintiff's claim of unfair and deceptive trade practices.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is considered "material" if it "might affect the outcome of the suit under the governing law ...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). Under this standard, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* As a result, the Court will only enter summary judgment in favor of the

1. Plaintiff also sought punitive damages and/or treble damages based upon his claim of bad faith and unfair and deceptive trade practices against Defendant. In light the Court's dismissal of this claim, these requested forms of relief are no longer relevant.

moving party when the record " 'shows a right to judgment with such clarity as to leave no room for controversy' " and clearly demonstrates that the non-moving party " 'cannot prevail under any circumstances.' " *Campbell v. Hewitt, Coleman & Assocs., Inc.,* 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.,* 381 F.2d 245, 249 (4th Cir.1967)).

When ruling on a summary judgment motion, the Court views the evidence in the light most favorable to the non-moving party, according that party the "benefit of all reasonable inferences." *Bailey v. Blue Cross & Blue Shield of Virginia,* 67 F.3d 53, 56 (4th Cir.1995), *cert. denied,* 516 U.S. 1159, 116 S.Ct. 1043, 134 L.Ed.2d 190 (1996). The moving party bears the initial burden of establishing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. *Catawba Indian Tribe of S.C. v. South Carolina,* 978 F.2d 1334, 1339 (4th Cir.1992), *cert. denied,* 507 U.S. 972, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993). Once the moving party has met this burden, the adverse, or non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id.* In so doing, the adverse party may not rest on mere allegations, denials, or unsupported assertions, but must, through affidavits or otherwise, provide evidence of a genuine dispute. *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202; *Catawba Indian Tribe,* 978 F.2d at 1339. In other words, the non-moving party must show "more than ... some metaphysical doubt as to the material facts," for the mere existence of a scintilla of evidence in support of his position is insufficient to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Catawba Indian Tribe,* 978 F.2d at 1339.

**B. Defendant's Motion for Partial Summary Judgment**

The Court will first address Defendant's Motion for Partial Summary Judgment. Plaintiff does not oppose this motion. In his brief in support of his motion for summary judgment Plaintiff states: "With regard to the alleged unfair and deceptive trade practices committed by The Phoenix Insurance Company, the undersigned acknowledges that evidence gathered during discovery is insufficient to support a claim for unfair and deceptive trade practices and as such, the Plaintiff will not oppose an Order of Summary Judgment being entered on this issue against the Plaintiff." (Pl.'s Br. In Sup. of Mot. for Sum. Judg., at 19.) Accordingly, the Court will grant Defendant's Motion for Partial Summary Judgment with respect to Plaintiff's claim for unfair and deceptive trade practices.

**C. Plaintiff's Motion for Summary Judgment**

Plaintiff contends he must satisfy three elements to prevail on his motion: 1) that Defendant had a duty to defend Prince in the underlying action filed by Raul Lozada; 2) that Defendant breached the duty to defend Prince and that it was unjustified in doing so; and 3) that Defendant is bound by and liable for payment of the underlying Judgment. As to the first element, Plaintiff argues, essentially, that the mere possibility that the claim may be covered triggers the duty to defend. He then points to evidence that Mr. Prince lived at his Mother's residence—such as the police accident report which listed Mr. Prince's address the same as his Mother's, as well as interviews conducted by one of Defendant's claims investigators of Mr. Prince, his Mother, and his girlfriend—and argues that Defendant was aware of this evidence prior to the lawsuit being filed against Prince. Accordingly, Plaintiff ar-

gues, because Defendant had knowledge of the possibility of coverage there is no genuine issue as to whether Defendant had a duty to defend Prince.

As to the second element, Plaintiff submits that an insurer's refusal to defend is unjustified even if it is based upon an honest, but mistaken belief that a claim is not covered. He further alleges that Defendant's failure to take any action prior to the Default Judgment being entered against Prince constituted a breach of its duty to defend. Finally, with regard to the third element, Plaintiff contends that, if an insurer had a right to defend the action against the insured, had timely notice of such action, and defends or elects not to defend, the resulting judgment rendered, in the absence of fraud or collusion, is binding upon the insurer. Thus, Plaintiff concludes, by breaching its duty to defend Prince, Defendant is fully responsible for payment of the Judgment entered against Prince and for any associated costs.

Defendant responds by arguing it had no duty to defend Prince and contends that the principal source for determining an insurer's duty are the allegations contained in a plaintiff's complaint. Here Defendant argues Prince was not a resident of his Mother's household. Moreover, Defendant contends that the allegations in the Complaint filed in the underlying suit, in which Plaintiff Lozada sued Prince directly and obtained the $500,000 Judgment against him, did not specifically allege that Prince was a resident of his Mother's household. At the time the Complaint was filed against Prince and two copies of the Complaint had been delivered to Defendant, Defendant contends that it had undertaken its own internal investigation and had determined that Prince was not a resident of the household of the policy insured, Ms. David. Defendant contends that its position was supported by oral statements

from Ms. David, Prince's girl friend Angela Terry, and Prince himself. As an alternative argument, Defendant argues that, even if it was obligated to defend, then its duty was contractual and not statutory. Defendant therefore argues that any duty it had to defend would have subjected it to pay only any judgment up to the limits of its coverage and no more, which in this case was $25,000.00.

▇▇▇ Indeed, the duty of an insurer to defend its insured is based upon the coverage contracted for in the insurance policy. *St. Paul Fire & Marine Ins. Co. v. Vigilant Ins. Co.*, 724 F.Supp. 1173, 1176 (M.D.N.C.1989) (citing *Mastrom Inc. v. Continental Casualty Co.*, 78 N.C.App. 483, 337 S.E.2d 162 (1985)). A typical primary insurance contract imposes two principal duties on the insurer in exchange for the premiums paid. One is "a duty to indemnify the insured, within policy limits, for the amount of any judgment awarded against the insured" and the other is "a duty to provide legal services in defense of a claim against the insured." *Collins & Aikman Prod. Co. v. Hartford Accident & Indemnity Co.*, 125 N.C.App. 412, 414, 481 S.E.2d 96, 97 (1997), *review denied*, 345 N.C. 752, 485 S.E.2d 51 (1997). However, an insurer's duty to defend is broader than its duty to pay damages. *Estate of Teel by Naddeo v. Darby*, 129 N.C.App. 604, 610, 500 S.E.2d 759, 763 (1998) (citing *Walsh v. National Indemnity Co.*, 80 N.C.App. 643, 343 S.E.2d 430 (1986)). "An insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings; its duty to pay is measured by the facts ultimately determined at trial." *Waste Management of Carolinas, Inc. v. Peerless Insurance Company*, 315 N.C. 688, 691, 340 S.E.2d 374, 377 (1986), *petition for reh'g denied*, 316 N.C. 386, 346 S.E.2d 134 (1986). When the pleadings "state facts demonstrating that the alleged injury is covered

by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable." *Id.* (citing *Strickland v. Hughes,* 273 N.C. 481, 487, 160 S.E.2d 313, 318 (1968)); *accord Royal Ins. Company of America v. Cato Corp.,* 125 N.C.App. 544, 550, 481 S.E.2d 383, 386 (1997).

■■■■ Under North Carolina law, in determining whether or not an insurer has a duty to defend the Court is to employ a "comparison test" wherein it compares the insurance policy in question with the allegations of the complaint in the primary action. *St. Paul,* 724 F.Supp. at 1176. As noted, the insurer's duty to defend is generally measured by the facts as alleged in the pleadings. Therefore, if the allegations of the complaint bring the claim within the coverage of the policy, then an insurer's duty to defend is absolute. *Strickland v. Hughes,* 273 N.C. 481, 487, 160 S.E.2d 313, 318 (1968). While generally speaking the courts undertake the "comparison test" by looking at the allegation of the complaint in comparison with the insurance policy, the Court notes that matters outside the pleading may also be taken into account "[w]here the insurer knows or could reasonably ascertain facts that, if proven, would be covered by its policy ...." *Waste Management,* 315 N.C. at 691, 340 S.E.2d at 377 (citation omitted). "[T]he duty to defend is not dismissed because the facts alleged in a third-party complaint appear to be outside coverage ...." *Id.* In situations where there exists a possibility of coverage, "the insurer's refusal to defend is at his own peril: if the evidence subsequently presented at trial reveals that the events are covered, the insurer will be responsible for the cost of the defense." *Id.* Finally, the requirement imposing a duty to defend in these instances is buttressed by North Carolina law which provides a presumption that "[a]ny doubt as to coverage is to be resolved in favor of the insured." *Id.* at 693, 340 S.E.2d at 378 (citations omitted). There-

fore, "provisions of insurance policies ... which extend coverage must be construed liberally so as to provide coverage, whenever possible by reasonable construction." *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.,* 318 N.C. 534, 538, 350 S.E.2d 66, 68 (1986) (citations omitted).

■■■■ The critical inquiry for this Court, then, is whether Defendant had a duty to defend Prince in the underlying suit Plaintiff brought against him. For comparison purposes, the relevant language of the policy provides that certain individuals are covered in addition to the named insured. One such category would be a "family member," which is defined as "a person related to you [the named insured] by blood, marriage or adoption who is a resident of your household." (Def.'s Memo. of Law in Opp. to Pl.'s Mot. for Sum. Judg., Exh. I). Defendant is arguably correct in its assertion that the allegations of the underlying Complaint against Prince do not directly state whether or not Prince was a resident of Ms. David's household at the time of the accident on August 13, 1999. Defendant is incorrect, however, in its contention that "[n]o allegations that Mr. Phillip Anthony Prince was a resident of the insured's household were made until the filing of the subsequent suit, i.e., the one before the Court at this time." (Def.'s Memo. of Law in Opp. to Pl.'s Mot. for Sum Judg., p. 4–5).

After considering matters outside of the pleadings, as the Court is permitted to do, there is little doubt that Plaintiff's letters to Defendant of March 15 and 21, 2000, put Defendant on notice of Plaintiff's belief that Prince was a resident of Ms. David's household and therefore a "family member" for insurance purposes. Defendant was therefore aware of the possibility that Prince was an "insured" under Defendant's policy, thereby requiring Defendant to defend Prince. In addition, Plaintiff provided Defendant with further notice of

his claim against Defendant's insured by sending Defendant, by Certified Mail, a copy of the Complaint against Prince, shortly after it was filed. It is also important to note that Defendant responded to this information by undertaking its own investigation and by advising Ms. David in a March 29, 2000 letter that it was undertaking such an investigation into whether or not there was a possibility of coverage for Prince's involvement in the August 13, 1999 accident. (Def.'s Memo. of Law in Opp. to Pl.'s Mot. for Sum Judg., Exh. E). Certainly, Defendant's undertaking such an investigation was generated by a concern of the possibility of coverage under Ms. David's policy because of the information provided by Plaintiff that Prince was a resident of the insured's household. Therefore, without deciding the credibility or weight of such information provided by Plaintiff, the Court finds, based upon the information Plaintiff provided to Defendant prior to Plaintiff's filing of the lawsuit, that Defendant knew or could reasonably have ascertained that Plaintiff has raised facts about the residency of Prince that, if proven, would have provided coverage to Prince under Ms. David's policy issued by Defendant.

■ In addition to asserting that there was no allegation in the Complaint specifically alleging that Prince was a resident of his mother's household, Defendant also argues, with respect to the residency question that "it is clear from the record that when the complaint against Mr. Prince

was provided to the defendant, it had already been established by investigation and confirmation by Mr. Prince himself, his mother and his girlfriend that he was not a resident of the household of the insured under the policy." (Def.'s Memo. of Law in Opp. to Pl.'s Mot. for Sum Judg., p. 5). Even with this information, however, Defendant elected not to defend upon its defense of lack of residency which would have been available to it in the underlying lawsuit against Prince. To Defendant's detriment, Prince failed to answer the Complaint and a Default Judgment was entered against him in the amount of $500,000. Solely with respect to the duty to defend question, Defendant's failure to defend under the circumstances of this case has been addressed by North Carolina law which provides that "[w]ith regard to claims against an insured in which a default judgment is obtained in favor of the claimant, if an insurer had a right to defend the injury action against the insured, had timely notice of such action, and defends or elects not to defend, the judgment, in the absence of fraud or collusion, is binding upon the insurer as to issues which were or might have been litigated therein." *Naddeo v. Allstate Insurance Co.*, 139 N.C.App. 311, 318, 533 S.E.2d 501, 506 (2000) (citation omitted).

Here, the issue of coverage or the lack thereof, based upon the residency defense now raised by Defendant, could have been litigated in defense of the underlying suit against Prince.[2] Defendant may very well

2. Defendant contends "the issue of residency was not an issue in the underlying suit, was not found by default to be a fact in the case and the carrier is entitled to litigate the issue in a subsequent proceeding." (Def.'s Memo. of Law in Opp. to Pl.'s Mot. for Sum Judg., p. 14). In so arguing, Defendant attempts to distinguish the *Naddeo* decision. The Court finds *Naddeo* to be directly applicable; there the issue involved the effective dates of the policy, here the debate concerns who falls within policy definitions—both are questions

of coverage. Both could have been litigated under the insurer's right to defend the initial injury action against the insured. Finally, interpreting the duty to defend in this manner does not "expose insurance carriers to obligations so far beyond those contracted for as to open a Pandora's box of social cost." (Def.'s Memo. of Law in Opp. to Pl.'s Mot. for Sum Judg., p. 14). Prior to defending the underlying suit, Defendant could simply have filed a Declaratory Judgment action in state

have completed an investigation and satisfied itself that there was no coverage, but its failure and refusal to defend was at its own peril, and the judgment of liability is therefore binding against Defendant.

The Court finds, with respect to considering this matter under the comparison test, that with the information known to Defendant both prior to and after the Complaint was filed against Prince, the facts alleged in the Complaint arguably fell within the reaches of Ms. David's policy for coverage of Prince. Even if they did not, when the Court considers information that was available to Defendant outside of the pleadings, the Court finds that Defendant was well aware of facts presented by Plaintiff, which, if proven, would bring Plaintiff's claim within the coverage of the policy issued to Ms. David. Accordingly, the possibility of coverage imposed a duty upon Defendant to defend the claim against Prince as an insured under the policy. The Court further finds that Defendant breached this duty by failing to defend Prince and therefore the judgment of liability entered against Prince, which Defendant had an opportunity to defend, is binding as to Defendant. Thus, Plaintiff has met his burden of establishing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. Therefore, Plaintiff's Motion for Summary Judgment is GRANTED.

### D. Amount of Liability

██ Having found that there existed a possibility of a claim against its insured which required Defendant to defend Prince in the underlying suit and that De-

fendant breached that duty, the Court must now consider what further obligation Defendant has with regard to the $500,000 judgment entered against Prince.

Plaintiff argues that the relevant North Carolina law on the issue is illustrated by *Naddeo v. Allstate*, 139 N.C.App. 311, 533 S.E.2d 501 (2000). In *Naddeo*, the North Carolina Court of Appeals reasoned that by denying liability and refusing to defend claims that could possibly have been covered by the policy, the insurance company committed a breach of the policy and thereby waived the policy provisions defining the duties and obligations of the insured. *Naddeo*, 139 N.C.App. at 320, 533 S.E.2d at 507. Accordingly, the court held that the insurance company's refusal to defend precluded it from asserting its policy defenses. *Id.* The court then concluded: "because it unjustifiably refused to provide a defense, Allstate has 'obligated itself to pay the amount and costs of a reasonable settlement.'" *Id.* at 321, 533 S.E.2d at 507 (quoting *Duke University*, 96 N.C.App. at 637, 386 S.E.2d at 763.). The court determined that the trial court, in entering a default judgment against the insured, had set a reasonable settlement at $250,000. *Id.* Plaintiff relies upon the *Naddeo* case to argue that Defendant's liability for failure to defend extends to the entire default judgment award of $500,000.

Defendant disagrees and asserts that the issues in the matter are those of contract and argues there is no authority for expansion of Defendant's obligations to cover an amount in excess of its policy limits. Defendant points out that in the *Naddeo* decision, upon which Plaintiff re-

court to have the court determine Defendant's obligation as to Mr. Prince. *See St. Paul,* 724 F.Supp. at 1180 ("[T]hree options are available to a liability insurer requested to defend an insured against claims which the insurer believes exceed policy coverage. The insurer can (1) seek a declaratory judgment regarding

its obligations before or pending trial of the underlying action, (2) defend the insured under a reservation of rights, or (3) refuse either to defend or to seek a declaratory judgment at the insurer's peril that it might later be found to have breached its duty to defend." (quotation omitted)).

lies, the North Carolina Court of Appeals was dealing with an insurance carrier defendant's attempt to limit its exposure to the minimum liability amounts of $25,000 per person/$50,000 per accident, as set forth in the North Carolina Financial Responsibility Act. *Id.* at 320–21, 533 S.E.2d at 507. In upholding the $250,000 judgment set by the trial court, the *Naddeo* court did not permit such a limitation. *Id.* Defendant notes, however, that the court of appeals did not hold that the carrier was obligated to pay an amount in excess of its policy limit, which in *Naddeo* was $300,000 per person and $500,000 per occurrence. (*see* Def.'s Memo. of Law in Opp. to Pl.'s Mot. for Sum Judg., Exh. J. Setting forth policy limits in *Naddeo* case). Defendant also addresses the *Duke University* case, upon which the *Naddeo* decision relied, and argues: "nothing in the opinion mentions an obligation for the carrier to provide coverage beyond the policy limits. The case language simply recites the general proposition that in an instance where it is determined that there is an unjustified refusal to defend, the carrier is liable for the amount of the settlement." (Def.'s Memo. of Law in Opp. to Pl.'s Mot. for Sum Judg., p. 15–16). In both cases however, the question of the reasonableness of the settlement, within the policy limits, would be for the court to decide.

Although, initially, neither party made any mention of the case, the Court finds that the North Carolina Supreme Court decision of *Wilson v. State Farm Mut. Auto. Ins. Co.,* 327 N.C. 419, 394 S.E.2d 807 (1990) governs this issue on the extent of an insurer's monetary exposure in a duty to defend case.[3] The salient facts of *Wilson* are similar enough to the present case to warrant detailed discussion. In *Wilson,* three plaintiffs were injured in a collision between an automobile in which they were riding and an automobile being driven by a Mr. Fields (Fields). *Wilson,* 327 N.C. at 420, 394 S.E.2d at 808. At the time of the accident, Fields was separated from his wife but was driving a car that she owned and which was covered by a policy issued by North Carolina Farm Bureau Mutual Insurance Company (Farm Bureau). *Id.* The plaintiffs initially brought an action against Fields and his wife. *Id.* Farm Bureau defended the claim against the wife but refused to defend the claim against Fields. *Id.* The claim against the wife was dismissed and subsequently Fields, who was not represented by counsel, settled the cases against him by consenting to three judgments totaling $51,000. *Id.* The plaintiffs had uninsured/underinsured motorist coverage, but their insurance company refused to pay the judgments, as did Farm Bureau. *Id.* The plaintiffs then brought suit to determine which of the two insurance companies was liable. *Id.*

During the trial the plaintiffs alleged Fields was a resident of the same household as his wife at the time of the accident. *Id.* at 420–21, 394 S.E.2d at 808. After the jury determined Fields was a resident of the same household as his wife, the trial court entered a judgment in which it found that Fields was covered by his wife's policy with Farm Bureau, that Farm Bureau breached its contract by wrongfully failing to defend Fields, and that Farm Bureau's failure to defend was unjustified and in bad faith regardless of any mistaken belief that the claim was outside the policy coverage. *Id.* at 422, 394 S.E.2d at 809. The court then entered judgment against Farm Bureau for $51,000. *Id.*

---

**3.** Defendant on December 16, 2002, filed a Notice of Subsequently Discovered Authority [Document # 21] citing the *Wilson* decision, which it asserts speaks directly to the issue of whether Defendant may be obligated to pay a judgment in excess of its policy limits.

674

Among the questions the North Carolina Supreme Court in *Wilson* considered, on discretionary review, was "whether the plaintiffs may recover from Farm Bureau damages which exceeded the liability coverage for the Fields." *Id.* at 424, 394 S.E.2d at 811. The court held that "the plaintiffs were not damaged by the failure of Farm Bureau to defend Fields ..." and therefore the plaintiffs could not recover from Farm Bureau for damages in excess of its policy limits. *Id.* at 425, 394 S.E.2d at 811. The court reasoned that "[i]f Farm Bureau had defended the claim against Fields and the plaintiffs had recovered more than the policy limits, the plaintiffs could not have recovered this excess from Farm Bureau." *Id.* The court then noted that "[t]his is not the same as a case in which a carrier wrongfully refuses to defend its insured or wrongfully refuses to settle the claim and damages are recovered against the insured in excess of the coverage. In such a case the insured has been damaged and has a claim against the insurer." *Id.*

Applying *Wilson* to the case at bar makes it apparent that Plaintiff may not recover from Defendant beyond the $25,000 policy limit because Plaintiff was not damaged by Defendant's refusal to defend Prince. As with *Wilson*, if Defendant had defended Plaintiff's underlying action against Prince and Plaintiff had recovered more than the policy limits, Plaintiff could not have recovered the excess from Defendant. Also, like *Wilson*, this is not a case where the insurer wrongfully refused to defend someone who was unquestionably its insured, in which case that insured would have a claim against the insurer for any damages recovered against the insured in excess of the policy limits. Rather, this is a case where Defendant had a duty to defend which arose from the possibility that a claim was covered and, when Defendant declined its opportunity to defend, the judgment rendered in favor of Plaintiff became binding on Defendant, at least, as *Wilson* holds, to the extent of its policy limits, which in this case is $25,000.

IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Partial Summary Judgment [Document # 18] is GRANTED such that Plaintiff's claim for unfair and deceptive trade practices is hereby DISMISSED. Also for the reasons explained above, Plaintiff's Motion for Summary Judgment is GRANTED in part to the extent that the Court has concluded that Defendant breached its duty to defend Prince in the lawsuit filed against him by Plaintiff. Plaintiff's Motion for Summary Judgement is DENIED to the extent that Plaintiff seeks to enforce the entire Default Judgment of $500,000 against Defendant. For the reasons stated herein, Defendant's liability for breaching the duty to defend Prince is limited to its policy limits of $25,000.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Defendant is liable to Plaintiff for $25,000 of the $500,000 judgment Plaintiff recovered in the underlying lawsuit against Phillip Anthony Prince. An Order and Judgment in accord with this Memorandum Opinion shall be filed contemporaneously herewith.

*ORDER AND JUDGMENT*

For the reasons stated in the Memorandum Opinion filed contemporaneously herewith, Defendant's Motion for Partial Summary Judgment [Document # 18] is GRANTED such that Plaintiff's claim for unfair and deceptive trade practices is hereby DISMISSED. Furthermore, for the reasons previously explained in the Memorandum Opinion, Plaintiff's Motion for Summary Judgment is GRANTED in part to the extent that the Court has con-

cluded that Defendant breached its duty to defend Prince in the lawsuit filed against him by Plaintiff. Plaintiff's Motion for Summary Judgment is DENIED to the extent that Plaintiff seeks to enforce the entire Default Judgment of $500,000 against Defendant.

It is thereby ORDERED, ADJUDGED, AND DECREED that Defendant is liable to Plaintiff for $25,000 of the $500,000 judgment Plaintiff recovered in the underlying lawsuit against Phillip Anthony Prince.