BITUMINOUS CASUALTY CORPORATION, Plaintiff and Counterdefendant-Appellant, *v.* THE NORTH RIVER INSURANCE COMPANY, Defendant and Counterplaintiff-Appellee.

First District (5th Division)   No. 76-118

Opinion filed February 25, 1977.—Rehearing denied April 7, 1977.

Crooks, Gilligan and Kages, of Chicago, for appellant.

Ruff and Grotefeld, Ltd., of Chicago (Edward P. Freud, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Bituminous Casualty Corporation (Bituminous), plaintiff and counterdefendant, filed a complaint against North River Insurance Company (North River), defendant and counterplaintiff, and North River filed a counterclaim against Bituminous. Each sought a declaratory judgment of rights under their respective insurance policies and for reimbursement of $25,000 paid by each to effect a $50,000 settlement of a lawsuit filed by Elizabeth Cullen and Daniel J. Cullen for personal injuries sustained in an accident with a tractor-trailer unit operated by Tom O'Malley. The cause was tried upon a written stipulation of facts. The trial court entered an order in favor of North River and against Bituminous for a judgment of $25,000 and denying the relief prayed by Bituminous in its complaint. Bituminous appeals from the order for judgment and the denial of relief. The sole issue is which party's policy provides coverage for the accident in the instant case. We reverse and enter judgment here in favor of Bituminous.

The accident between the Cullens and O'Malley occurred on July 19, 1967. The Cullens filed suit against W. W. Young & Sons, Inc. (W. W. Young), Chicago Medinah Temple (Medinah), International Harvester Company (Harvester), and Tom O'Malley. Bituminous had issued a policy of liability insurance to W. W. Young. North River had issued a similar policy to Medinah. Medinah owned a Chanter's trailer which it used in parades and was in the custom of borrowing tractors to pull it. On July 3, 1967, Harvester loaned Medinah the tractor later involved in the accident under a loan agreement, addressed to Harvester, which stated in part that "[w]e acknowledge that ownership of this vehicle is and

remains in you * * *. We agree that the vehicle will be operated only by our authorized representatives." The agreement was signed by Leslie Young on behalf of Medinah. The tractor was delivered for the use of Medinah to the premises of W. W. Young.

Leslie Young was president of W. W. Young and also a member of the Medinah's Chanters Group. As a Shriner, he drove the tractor and trailer in all parades with the permission of Medinah. Between parades the equipment was stored on the premises of W. W. Young, the trailer having been stored there for approximately 15 years prior to the accident. The tractor and trailer were used in three parades in the summer of 1967 and otherwise were not removed from the premises of W. W. Young. A week prior to the accident the tractor and trailer were shipped to Washington, D. C., for a parade and were then returned by railroad. Leslie Young drove Tom O'Malley to the railroad terminal and directed him to return the tractor and trailer to the premises of W. W. Young. O'Malley was regularly employed by W. W. Young. In the course of returning the equipment, the accident occurred.

The Cullens' claim was settled for $50,000 pursuant to an agreement of Bituminous and North River that each would pay $25,000 toward the settlement and would then litigate the insurance. coverage question involved therein.

Carl W. Lutz was the recorder for Medinah, similar to the position of secretary and business manager. To his knowledge the trailer was gratuitously stored by Leslie Young when not in use in parades. Leslie Young was the regular driver for Medinah in parades and saw to it that the unit reached the parade and was thereafter returned to storage.

Harvester proposed that W. W. Young purchase the tractor at cost after the Medinah parade agenda had been completed that summer. A letter confirming the agreement was sent to Harvester on June 20, 1967, and in fact the tractor was purchased later that year. The tractor received only minor damage in the accident and was repaired by employees of W. W. Young. W. W. Young was a cartage company and was not in the business of storing vehicles other than their own.

OPINION

■■ The general principles governing the interpretation and construction of insurance contracts do not differ from those controlling in other contracts. (*Whaley v. American National Insurance Co.* (1975), 30 Ill. App. 3d 32, 331 N.E.2d 571; *Jensen v. New Amsterdam Insurance Co.* (1965), 65 Ill. App. 2d 407, 213 N.E.2d 141.) Thus, in construing insurance contracts the court's primary purpose is to give effect to the intention of the parties as expressed therein. (*Goetze v. Franklin Life Insurance Co.* (1975), 26 Ill. App. 3d 104, 324 N.E.2d 437; *Dawe's Laboratories, N.V. v.*

*Commercial Insurance Co. of Newark* (1974), 19 Ill. App. 3d 1039, 313 N.E.2d 218.) In the absence of ambiguity words in the insurance policy are to be given their plain, ordinary and popular meaning. (*Weiss v. Bituminous Casualty Corp.* (1974), 59 Ill. 2d 165, 319 N.E.2d 491; *Goetze v. Franklin Life Insurance Co.*) No such ambiguities are presented in the contractual provisions here.

The two insurance policies in the instant case contain essentially identical provisions. However, on June 15, 1967, a general purpose endorsement was added to the North River policy which states:

> "It is agreed that W. W. Young & Sons, Inc. are added as an additional insured as respects to their interest in the vehicles loaned to insured in parades. It is further agreed that our policy is excess over any other similar insurance."

North River concedes that both W. W. Young and Tom O'Malley became its insureds under this clause but argues that the excess coverage is not called into effect since Bituminous is primarily liable for the accident. However, the case at bar does not present a dispute as to excess coverage. Rather, the issue is simply which policy provides primary coverage for the instant accident.

The Bituminous policy issued to W. W. Young provides in pertinent part:

> "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> C. bodily injury or
>
> D. property damage
>
> * * * caused by an occurrence arising out of the ownership, maintenance or use * * * of any automobile * * *.
>
> * * *

II. PERSONS INSURED

> "Each of the following is an insured under this insurance to the extent set forth below:
>
> (a) the named insured;
>
> (b) any partner or executive officer thereof, but with respect to a non-owned automobile only while such automobile is being used in the business of the named insured;
>
> (c) any other person while using an owned automobile or a hired automobile with the permission of the named insured * * *;
>
> (d) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (a), (b) or (c) above."

As applied to the facts here, we find that Bituminous was not obligated to defend or indemnify any of the parties to the original action.

Bituminous was not obliged to pay damages on behalf of W. W. Young, the named insured, since the occurrence did not *arise out of* its ownership, maintenance or use of the vehicle involved. At the time of the occurrence, W. W. Young did not own the tractor notwithstanding the understanding reached whereby it would purchase the tractor from Harvester at a future date. The understanding had no effect upon, or relation to, ownership of the tractor at the time of the accident. As recited in the loan agreement with Medinah, Harvester owned the tractor.

■■ However, North River contends that since the tractor was stored at W. W. Young between parades, it can be inferred that W. W. Young maintained the tractor during that period. Even conceding such an inference, there is no liability. The damages in question were not "caused by an occurrence *arising out of*" the maintenance of the tractor. The plain meaning of the foregoing clause is that liability will accrue where faulty or negligent maintenance of a vehicle results in an incident causing damages to another. There is no evidence that the accident had any connection with the manner in which the vehicle was maintained. The fact that W. W. Young through its employees repaired the tractor after the accident is not inconsistent with this conclusion.

■■ The accident clearly resulted from *use* of the tractor. Yet, Bituminous is not liable since at the time W. W. Young was not the party using the tractor nor was it being used in its business. The tractor was delivered to the premises of W. W. Young *for the use of Medinah*. W. W. Young never used the tractor for its own purposes until after its subsequent purchase from Harvester. At the time of the accident the tractor-trailer unit was being used by Medinah. It had been to a parade under the auspices of Leslie Young acting as a Shriner with the permission of Medinah and was being returned to storage under the same conditions.

Neither was Bituminous obligated to defend and indemnify Tom O'Malley. While he was in fact using the vehicle when the accident occurred, O'Malley is not covered by Bituminous since he is not within the class of "persons insured." The only definition possible would be that contained in clause (c) excerpted above which provides coverage for "any person while using an owned automobile or a hired automobile." The tractor was clearly not an owned vehicle which the policy defines as "an automobile owned by the named insured" and it was not a hired automobile, which is defined as "an automobile not owned by the named insured *which is used under contract in behalf of, or loaned to, the named insured * * *.*" (Emphasis added.) Contrary to North River's contention, the tractor was not being used under contract on behalf of W. W. Young. While W. W. Young agreed to later purchase the vehicle, it was being used at the time of the accident under the loan agreement on behalf of Medinah on its return from a parade. The mere fact that O'Malley was an

employee of W. W. Young does not make him an insured under the Bituminous policy. Since the vehicle at the time of the accident was neither owned nor hired by W. W. Young, O'Malley was not an insured under clause (c) of the Bituminous policy.

Nor did Bituminous provide coverage for either Medinah or Harvester. An insured under clause (d) provides coverage to any other person and only with respect to liability "because of acts or omissions of an insured under (a), (b) or (c) above." Since no acts of (a) the named insured, namely W. W. Young, created any liability, and since O'Malley is not an insured under clause (c), then neither Medinah nor Harvester can be insureds under clause (d). Therefore, no coverage is provided for the incident in question under the Bituminous policy.

On the other hand the North River policy provides primary coverage for the accident. Its provisions are identical to those previously excerpted from the Bituminous policy. Coverage there is provided for damages arising out of ownership, maintenance or use of any automobile. At the time Medinah was the only one using the tractor-trailer unit. It was being returned to storage with the permission of Medinah, under the auspices of Leslie Young who was acting as a Shriner. Since the use was solely that of Medinah, the named insured, primary coverage was afforded by the North River policy.

■■■ Furthermore, O'Malley is also an insured under the North River policy. He was a permissive user within the scope of clause (c) of persons insured, being a person using "a hired automobile with the permission of the named insured." Illinois has adopted the "initial permission" rule. If the named insured initially gives permission to another to use the *owned* vehicle, all subsequent users by permission of the initial permittee are covered by the insurance policy. (*Maryland Casualty Co. v. Iowa National Mutual Insurance Co.* (1973), 54 Ill. 2d 333, 297 N.E.2d 163; *Grahame v. Mitchell* (1975), 28 Ill. App. 3d 334, 329 N.E.2d 17.) In such case a further grant of permission from the initial permittee to the subsequent user need not be shown in order to invoke coverage. (*United States Fidelity and Guaranty Co. v. McManus* (1976), 64 Ill. 2d 239, 356 N.E.2d 78.) However, clause (c) specifically provides coverage for permissive users of *hired*, rather than owned automobiles as in the cases cited. This difference does not preclude application of the initial permission rule. Under the North River policy the tractor was a hired automobile therein defined in clause (c) as "an automobile not owned by the named insured which is used under contract in behalf of or loaned to the named insured * * *." Leslie Young used the tractor as a Shriner with the permission of the named insured, Medinah, and thus was an insured. He was in complete command of the manner in which the unit was transported to and from parades. This initial permission granted by

Medinah to use the tractor on its behalf was extended in turn to Leslie Young's permittee, Tom O'Malley. When O'Malley was told by Leslie Young to drive the tractor back into storage, he was also using the tractor with the permission of the named insured and also became an insured under the North River policy. O'Malley's status as an employee of W. W. Young is immaterial to the coverage provided under clause (c). In addition, both W. W. Young and Harvester were covered as to the accident in question under North River policy clause (d) of "persons insured" since their liability arose because of a permissive user under clause (c) of the contract.

For the foregoing reasons, the trial court erred in entering an order in favor of North River against Bituminous for judgment and denying the relief prayed by Bituminous in its complaint. Accordingly, the order of the circuit court of Cook County is reversed. Judgment is here entered: (1) declaring that the North River policy provides primary coverage for the accident and the parties made defendants in the Cullen lawsuit, and that the Bituminous policy does not provide the primary coverage; and (2) in favor of Bituminous and against North River for $25,000.

Reversed with judgment here.

SULLIVAN, P. J., and LORENZ, J., concur.