2003 OK 97

**Dale PLY, Plaintiff,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA and Safeco Insurance Company of America, Defendants.**

No. 91,108.

Supreme Court of Oklahoma.

Nov. 12, 2003.

Rehearing Denied Dec. 18, 2003.

---

G. Steven Stidham, Brian S. Gaskill, Brian T. Inbody, Tulsa, OK, for plaintiff.

Jo Anne Deaton, Tulsa, OK, for defendant National Union Fire Insurance Company of Pittsburgh, Pennsylvania.

BOUDREAU, Justice:

¶ 1 Plaintiff, Dale Ply, suffered severe electric burns in a tragic accident that occurred while he worked on overhead electric wires from the raised bucket of a bucket truck. Plaintiff's employer, Davis H. Elliot Company, Inc., owned the bucket truck and insured it through National Union Fire Insurance Company of Pittsburgh, Pennsylvania, with an uninsured motorist (UM) endorsement. Plaintiff recovered workers' compensation benefits for his accidental injuries and now seeks to recover UM benefits.

¶ 2 Plaintiff filed a complaint in the United States District Court for the Northern District of Oklahoma against the UM insurer, alleging that the accident arose out of Elliot Company's negligent use and negligent maintenance of the bucket truck.[1] Insurer moved for summary judgment asserting that plaintiff's accident did not fall within the scope of the UM coverage because 1) his injuries were not caused by the actual use of the bucket truck by another person, and 2) even if Elliot Company negligently maintained the bucket truck, his injuries were not caused by such negligence.

¶ 3 At the summary judgment hearing, the court determined that there is no Oklahoma law controlling the questions presented. Accordingly, the federal district court, pursuant to the Revised Uniform Certification of Questions of Law Act, 20 O.S.Supp.1997, §§ 1601 et seq.,[2] certified the following questions of state law to this Court:

1. Whether an employer's or supervisor's instructions or directions to its employee regarding work to be performed by that employee, which involves the use of a company-owned vehicle, can constitute "use" of the vehicle by the employer or supervisor so as to give rise to potential liability under Oklahoma's uninsured motorist laws; and

2. Whether allegations of an employer's non-contemporaneous negligent maintenance of an employer-owned vehicle, if proven, are sufficient to establish an employee's potential entitlement to uninsured motorist benefits.

¶ 4 We reformulate the first question within the confines of the certified statement of facts.[3] We answer the two questions of state law in the affirmative.

## I. Statement of Facts

¶ 5 The federal court certified the following statement of facts:

1. Plaintiff also sued Safeco Insurance Company of America, the uninsured motorist carrier for Mary A. Whaler, plaintiff's mother, with whom he was living at the time of the accident. Prior to the order certifying the questions of state law to this Court, Safeco was dismissed with prejudice as a party.

2. In 1997, the Legislature revised the Uniform Certification of Questions of Law Act, 1997 Okla. Sess. Laws, ch. 61, which is now codified at 20 O.S.2001, §§ 1601 et seq.

3. 20 O.S.2001, § 1604 provides that the certifying court must set out the facts relevant to the question and acknowledge that this Court may reformulate the question.

1. Plaintiff, Dale Ply ("Ply"), received severe electrical burns, resulting in amputation of both his arms, in an accident which occurred on May 17, 1996, while he was working in the raised bucket of a bucket truck owned by his employer, Davis H. Elliot Company, Inc. ("Elliot Company").

2. The accident occurred when Ply was "tying in" electrical wires on a job near Broken Bow, Oklahoma, and came into contact with an energized line.

3. The bucket truck in which Ply was working at the time of the accident was owned by Elliot Company and insured by National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"), which carried the uninsured motorist coverage for Elliot Company's vehicles.

4. Ply was working alone in the bucket truck when his accident occurred with the knowledge of and pursuant to directions and instructions he received earlier that day from his supervisor.

5. Ply has alleged in his lawsuit that Elliot Company's Safety Handbook required that aerial bucket equipment should only be operated when at least two persons completely familiar with the hydraulic controls were present.

6. Ply has alleged in his lawsuit filed against National Union seeking uninsured motorist benefits that the accident resulted from the "use" of the bucket truck by Elliot Company or by Ply's supervisor, also an employee of Elliot Company.

7. The only vehicle which was present at the scene at the time of Ply's accident was the bucket truck owned by Elliot Company. No other vehicles were involved in the accident.

8. An investigation conducted by Elliot Company revealed that Ply's accident occurred when a canvas and leather tool bag, which was attached and hanging from the outside of the bucket, came into contact with an energized wire located below Ply.

9. The investigation further concluded that "whether the presence of a second crew member would have prevented the accident cannot be determined with any certainty."

10. Ply has alleged in his lawsuit filed against National Union seeking uninsured motorist benefits that there was a hydraulic fluid leak in the bucket truck's hydraulic boom which would occasionally cause the bucket to sag. Ply claims that the hydraulic boom on the bucket sagged right before his injury, causing him to come into contact with the energized line.

11. Ply has alleged in his lawsuit that Elliot Company did not properly maintain the hydraulic boom on the subject bucket truck.

12. Ply has alleged in his lawsuit that Elliot Company, through its supervisor, was negligent in instructing him to work alone in the bucket truck.

¶ 6 Ply claims he is entitled to recover uninsured motorist insurance benefits from Elliot Company's policy on the basis that: 1) Elliot Company, **as his employer,** was at fault in the use of its bucket truck when its supervisor assigned him to work alone from the bucket truck and this negligent use of the bucket truck caused his injuries; and 2) Elliot Company, **as owner of the bucket truck,** was negligent in the maintenance of the bucket truck and its negligent maintenance caused his injuries. National Union answers that: 1) an absent employer cannot be viewed as an uninsured motorist; and 2) any negligence in the maintenance of the bucket truck did not cause Ply's injuries.

## II. The uninsured motorist statute, 36 O.S.2001, § 3636.

¶ 7 Our analysis must begin with the UM statute, 36 O.S.2001, § 3636.[4] The stat-

---

4. The version of § 3636 applicable to Ply's 1996 accident is 36 O.S.Supp.1995, § 3636. Because the pertinent provisions of the 1995 version remain the same, this opinion references the latest codification of the statute in 2001. The pertinent provisions of § 3636 read:

A. No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued ... unless the policy includes the coverage described in subsection B of this section.

ute mandates UM coverage to protect insured persons from monetary loss due to personal injury resulting from an accident caused by another who carries no liability insurance or who is underinsured. *Uptegraft v. Home Insurance Co.*, 1983 OK 41, ¶ 6, 662 P.2d 681, 684.

■■■ ¶ 8 Our decisional law teaches that § 3636 mandates UM coverage where: 1) the injured person is an insured under the UM provisions of a policy;[5] 2) the injury to the insured has been caused by an accident;[6] 3) the injury to the insured has arisen out of the "ownership, maintenance or use" of a motor vehicle;[7] and 4) the injured insured is "legally entitled to recover damages from the owner or operator of the uninsured motor vehicle."[8] These four elements of an UM claim are determined from the facts and circumstances of each claim.

### III. The First Certified Question

¶ 9 The first question certified by the federal court reads:

Whether an employer's or supervisor's instructions or directions to its employee regarding work to be performed by that employee, which involves the use of a company-owned vehicle, can constitute "use" of the vehicle by the employer or supervisor

so as to give rise to potential liability under Oklahoma's uninsured motorist laws?

¶ 10 This question does not concern the first three elements of the mandated UM coverage set out above. It rests on the presumptions that Ply is an insured under the UM provisions in National Union's policy issued to Elliot Company; that Ply's injuries were accidental; and that Ply's injuries arose out of the use of a motor vehicle.[9]

¶ 11 Although expressed in terms of "use" of a motor vehicle, the substance of this query into potential liability relates to the employer's fault rather than use. In essence, it is an inquiry as to whether an employer providing faulty or negligent directions or instructions to an employee relating to the use of an employer-owned vehicle can be considered someone at fault from whom the injured employee may be "legally entitled to recover" under § 3636. Accordingly, we reformulate the question[10] to plainly state its substance, as follows:

Where a supervisor, acting on behalf of the employer, provides faulty or negligent instructions or directions to an employee relating to the use of an employer-owned motor vehicle and the employee is injured while following the instructions, can the employer be considered at fault within the meaning of the phrase "legally entitled to

---

B. The policy referred to in subsection A of this section shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles. . . .

5. We have said that UM coverage is available once it is determined that the injured person is an insured under the policy, *Torres v. Kansas City Fire and Marine Insurance Co.*, 1993 OK 32, ¶ 12, 849 P.2d 407, 411, and that a person qualifying as an insured is entitled to recover not only under his or her own UM policies but also under the UM endorsement for the motor vehicle in which he or she was located at the time of the injury. *Id.*, 1993 OK 32, at ¶ 15, 849 P.2d at 412.

6. The accidental nature of the injurious event is determined from the point of view of the injured insured. *Willard v. Kelley*, 1990 OK 127, ¶ 16, 803 P.2d 1124, 1130.

7. For purposes of § 3636, an injury "arises out of" the ownership, maintenance or use of an uninsured motor vehicle where the facts show that the injury is causally connected to the unin-

sured motor vehicle. *Mayer v. State Farm*, 1997 OK 67, ¶ 7, 944 P.2d 288, 290; *Safeco Insurance Co. of America v. Sanders*, 1990 OK 129, ¶ 12, 803 P.2d 688, 691; and *Willard v. Kelley*, 1990 OK 127, at ¶ 18, 803 P.2d at 1130–31.

8. *Uptegraft v. Home Insurance Co.*, 1983 OK 41, at ¶ 9, 662 P.2d at 685; and *Martin v. Hartford Underwriters Insurance Co.*, 1996 OK 55, ¶ 4, 918 P.2d 49, 51.

9. The defendant argues in its brief that Ply's injury did not arise out of the "use" of the bucket truck as that term is understood in the UM statute. However, the question certified does not ask whether Ply's injury arose out of the use of a motor vehicle. The certified question assumes that Ply's injury is causally connected to use of a motor vehicle in its transportation nature. For us to visit an issue outside of the range of the certified questions would be an unwarranted assumption of reviewing power. 20 O.S.2001, §§ 1601 *et seq.*

10. 20 O.S.2001, § 1602.1.

recover from the owner or operator" in § 3636 of title 36 of the Oklahoma Statutes.

¶ 12 In answering this novel question, we look first to Oklahoma UM law. Under our UM statute, a liability policy must provide UM coverage to an insured who is "legally entitled to recover from the owner or operator of an uninsured vehicle." Under our UM jurisprudence, the phrase "legally entitled to recover" normally refers to issues of fault. *Uptegraft v. Home Insurance Co.,* 1983 OK 41, at ¶ 6, 662 P.2d at 684. The phrase requires that "there must be a tortfeasor, someone who has committed a wrong from which the insured has suffered damages, before uninsured motorist coverage can come into play." *Martin v. Hartford Underwriters Insurance Co.,* 1996 OK 55, ¶ 4, 918 P.2d 49, 51. It does not mean that the injured insured must secure a judgment.[11] Rather, it means that the injured insured must establish fault on the part of the "owner or operator" of an uninsured vehicle and the extent of his or her damages. *See, Uptegraft v. Home Insurance Co.,* 1983 OK 41, at ¶ 9, 662 P.2d at 685.

¶ 13 The issue of fault is determined by the application of legal principles to the facts presented. If an insured can establish that his or her injury was caused by negligence on the part of the owner or operator of an uninsured vehicle, he or she can recover UM benefits. Negligence comprehends a failure to exercise due care required by the circumstances of the case, that is, a failure to do what an ordinary prudent person would have done under the circumstances or the doing of what such a person would not have done under the circumstances. *Kelly v. Cann* 1942 OK 299, ¶ 22, 192 Okla. 446, 136 P.2d 896, 899; *Salazar v. City of Oklahoma City,* 1999 OK 20, ¶ 20, 976 P.2d 1056, 1064.

¶ 14 National Union urges that Ply's accident does not come within the scope of the mandated UM coverage because there was no negligent uninsured motorist. It points out that the only motorist involved in the accident was Ply and that no other person was occupying or using the vehicle. It argues that to be at fault under § 3636, an employer must be a motorist, i.e., it must exercise active control or supervision of the vehicle in its transportation nature.[12]

¶ 15 We disagree. We have defined "operator" to include any person who is engaged in activity related to the transportation nature of the vehicle. *Safeco Insurance Co. v. Sanders,* at ¶ 31, 803 P.2d at 696. However, we have also said that UM-covered use is not limited to the driving-operation use of the uninsured motor vehicle. *Willard v. Kelley,* 1990 OK 127, at ¶ 19, 803 P.2d at 1131.

¶ 16 Section 3636 identifies two separate groups of persons from whom an injured insured may be legally entitled to recover 1) owners of uninsured vehicles or 2) operators of uninsured vehicles. The argument advanced by National Union would require an injured insured to demonstrate that he or she is legally entitled to recover from an "operator" of an uninsured vehicle. To accept National Union's argument, we would have to ignore the plain language of the statute that requires UM coverage for injury if the insured is legally entitled to recover

---

11. UM coverage is triggered if the at-fault motorist is a co-employee even though the co-employee is not answerable in a tort action because of the workers' compensation immunity. *Torres v. Kansas City Fire and Marine Insurance Co.,* 1993 OK 32, ¶ 15, 849 P.2d 407, 412; *Barfield v. Barfield,* 1987 OK 72, ¶ 13, 742 P.2d 1107, 1112.

12. In support of this argument, National Union cites *State Auto. Mutual Insurance Co. v. Rainsberg,* 86 Ohio App.3d 417, 621 N.E.2d 520 (1993); *Sicarelli v. State Farm Fire & Casualty Co.,* 556 So.2d 179 (La.Ct.App.1990); and *Plattenburg v. Allstate Insurance Co.,* 918 F.2d 562 (5th Cir.1990). These cases are legally and factually inapposite.

In the Ohio case, the defendant struck two persons as they attempted to direct traffic away from a stalled vehicle (the uninsured vehicle) in which they had been passengers, killing both persons and injuring his wrist. The Ohio court determined that the injury to defendant's wrist was not caused by the stalled uninsured motor vehicle. In the Louisiana case, plaintiff alleged that an unknown van crossed his path causing him to swerve and hit a utility pole. The Louisiana jury entered a finding against plaintiff and plaintiff appealed evidentiary and fact issues. In the Fifth Circuit case, the court considered the propriety of summary judgment in a bad faith case out of Texas. In that case, the record showed that the plaintiff was the driver at fault who collided with an uninsured motorist.

from an "owner" of an uninsured vehicle. According to the statute, an insured who has suffered an injury caused by an accident arising out of the use of an uninsured motor vehicle may recover UM benefits if the insured can demonstrate that he or she is "legally entitled to recover damages" from *either* the owner or the operator of the uninsured motor vehicle.

¶ 17 In sum, an employer may be at fault within the meaning of the phrase "legally entitled to recover from the owner or operator" in § 3636 where a supervisor, acting on behalf of the employer, provides faulty or negligent instructions or directions to an employee relating to the use of an employer-owned motor vehicle and the employee is injured while following the instructions. Allegations of such fault would present questions of fact that must be decided upon the evidence. We, of course, offer no opinion on the merits of Ply's allegations.

## IV. The Second Certified Question

■ ¶ 18 The second question certified by the federal court reads:

Whether allegations of an employer's non-contemporaneous negligent maintenance of an employer-owned vehicle, if proven, are sufficient to establish an employee's potential entitlement to uninsured motorist benefits.

■ ¶ 19 This question relates to the statutory requirement that the injury to the insured must arise out of the "maintenance" of a motor vehicle. It requires us to interpret the statutory language "arising out of ... maintenance". More precisely, we must determine whether the injury must occur during maintenance in order to be within the

maintenance provision in § 3636.[13] This is a first impression question in this jurisdiction and apparently has not been considered by our sister jurisdictions.

¶ 20 Statutory words are to be understood in their ordinary sense, unless a contrary intention plainly appears. 25 O.S.2001, § 1; *see also, W.S. Dickey Clay Mfg. Co. v. Ferguson Inv. Co.*, 1963 OK 298, 388 P.2d 300. In interpreting § 3636, we have followed the literal meaning and import of the language. *Keel v. MFA Insurance Co.*, 1976 OK 86, ¶ 10, 553 P.2d 153, 155.

¶ 21 In construing the phrase "arising out of use" in § 3636, we have determined that it consists of ordinary words with comprehensive significance which encompass a broad spectrum of factual sequences that might result in injury covered by the *liability* insurance. *Safeco Insurance Co. v. Sanders*, 1990 OK 129, ¶ 10, 803 P.2d 688, 691. In construing "arising out of ... use" in a liability policy, we have described the phrase as broad, general and comprehensive. *Penley v. Gulf Insurance Co.*, 1966 OK 84, ¶ 33, 414 P.2d 305, 311. Similarly, other jurisdictions have accorded broad meaning to the phrase "arising out of" as used in motor vehicle liability policies, concluding that "arising out of" is understood to mean "originating from," "having its origins in," "growing out of," or "flowing from". *See, Lawver v. Boling*, 71 Wis.2d 408, 238 N.W.2d 514 (1976) and the numerous cases cited in Couch on Insurance 3d, § 119.33, note 50, p. 119–50, and 6B Appleman, Insurance Law and Practice, § 4317, ftnt 49.05, pp. 363–64. *Accord, State Auto. Mutual Insurance Co. v. Rainsberg*, 86 Ohio App.3d 417, 621 N.E.2d 520 (1993) con-

---

**13.** For purposes of motor vehicle insurance, the word "maintenance" covers all acts which come within its ordinary scope and meaning, including acts of commission or omission relative to the external and mechanical condition of a vehicle. 6B Appleman, Insurance Law and Practice, § 4315, p. 339. The motor vehicle statutes impose certain external and mechanical requirements upon a motor vehicle that will be operated upon the public roads. For instance, 47 O.S. 2001, § 12–301 requires a motor vehicle be equipped with brakes and § 12–303 requires that the brakes by "maintained in good working order". This Court has held that the owner may be liable for injury caused by faulty maintenance of brakes or failure to maintain the brakes, *Bush v. Middleton*, 1959 OK 116, 340 P.2d 474 and 47 O.S.Supp.1957, § 148; that the owner and the operator may be liable for failure to exercise ordinary care regarding faulty brakes that have been previously repaired, *Gowins v. Merrell*, 1975 OK 135, 541 P.2d 857; but that neither the owner nor operator will be liable for unexpected brake failure where the owner properly maintains the brakes and the operator acts with ordinary care after a brake failure occurs, *Weaver v. Hoster*, 1969 OK 128, 459 P.2d 614.

struing "arising out of" for purposes of UM coverage.

¶ 22 National Union urges a restrictive reading of "arising out of maintenance." It argues that the maintenance provision in § 3636 means that the injury must occur during the act of maintenance of an uninsured motor vehicle. National Union does not, however, cite any authority directly on point.[14] In the absence of legal authority holding that injury must occur contemporaneously with the maintenance of a vehicle before UM coverage applies, we cannot accept the limited reading of "arising out of . . . maintenance" that National Union seeks to impose.

¶ 23 Although not addressing the precise issue presented by this certified question, the Supreme Court of Oregon has indicated that it would assign a broad meaning to "maintenance" for purposes of UM coverage. In *Oakridge Community Ambulance Service v. United States Fidelity & Guaranty Co.*, 278 Or. 21, 563 P.2d 164 (1977), the Oregon court observed that if the failure to maintain an ambulance caused delay in transporting a patient and the patient died because of the delay, the death would be viewed as "arising out of the maintenance" of the ambulance for motor vehicle liability purposes. Likewise, an appellate court in Illinois recognized that the plain meaning of "arising out of maintenance" is that liability will accrue where faulty or negligent maintenance of a vehicle results in an incident causing damages to another. *Bituminous Casualty Corp. v. North River Insurance Co.*, 46 Ill.App.3d 654, 658, 361 N.E.2d 60, 63, 5 Ill.Dec. 60, 63 (1977).

¶ 24 This Court has previously concluded that the language in § 3636 should be interpreted to accomplish the legislative purpose of providing coverage for injuries that would otherwise go uncompensated. *Simmons v. Hartford Accident & Indemnity Company*, 1975 OK 155, 543 P.2d 1384. In so doing, we have ascribed a broad, general and comprehensive meaning to the statutory words "arising out of". *Safeco Insurance Co. v. Sanders, supra.* Our extant jurisprudence compels us to reject an interpretation of § 3636 that would exclude from UM coverage injury resulting from non-contemporaneous negligent maintenance of a motor vehicle.

¶ 25 In sum, allegations of an employer's non-contemporaneous negligent maintenance of an employer-owned vehicle, if proven, are sufficient to establish an employee's potential entitlement to uninsured motorist benefits. The allegations would present a question to be decided from the facts and circumstances of the case. We, of course, offer no opinion on the merits of Ply's allegations.

**CERTIFIED AND REFORMULATED CERTIFIED QUESTIONS ANSWERED.**

WATT, C.J., and HODGES, LAVENDER, SUMMERS, and BOUDREAU, JJ. concur.

KAUGER, J., by separate writing, concurs specially.

OPALA, V.C.J., and HARGRAVE, J. and WINCHESTER, J., by separate writing, dissent.

14. As support for this argument, National Union cites cases from sister jurisdictions. Each of the cited cases, however, turned on the failure to prove causation. The court, in each case, found that the injury in question had no causal connection with the maintenance of the vehicle. In *Marklund v. Farm Bureau Mutual Insurance Co.*, 400 N.W.2d 337 (Minn.1987), the plaintiff slipped on a patch of ice and fell at the gas station as he walked around the vehicle to get his checkbook to pay for gasoline and the court determined that the injury was causally connected to the premises rather than the maintenance of the vehicle. In *Miller v. Loman*, 518 N.E.2d 486, 492 (4th Dist.Ind.App.1987), the plaintiff/passenger exited the vehicle to remove a muffler that fell off the vehicle from the roadway and was hit by another vehicle and the court determined that any causal connection between the injury and maintenance of the vehicle is too farfetched. In *Kurlak v. United Services Auto. Assoc.*, 362 So.2d 463, 464 (1st Dist.Fla.App. 1978), the owner of the uninsured vehicle was providing grease to plaintiff, at plaintiff's request, to service plaintiff's vehicle when the grease penetrated the skin on plaintiff's hand and the court determined that the owner of the uninsured motor vehicle had ceased maintenance of his vehicle and was engaged in helping plaintiff service his own vehicle and there was no causal connection between the injury and the maintenance of the uninsured vehicle. And, in *Walsh v. National Indemnity Co.*, 80 N.C.App. 643, 343 S.E.2d 430, 433 (N.C.1986), the plaintiff was hauling tires to a shop for repairs when a truck negligently backed into him and the court found the alleged facts did not arguably show a causal connection between the injury and repair or maintenance of the tires.

KAUGER, J. concurring specially:

¶ 1 I agree with the majority that 36 O.S. 2001 § 3636[1] extends coverage to insured individuals entitled to recover damages from either owners or operators of uninsured or underinsured motor vehicles. I also agree that an employer's non-contemporaneous negligent maintenance of an employer-owned vehicle may be sufficient to establish an employee's potential entitlement to uninsured motorist benefits.

¶ 2 I write separately to emphasize that the facts of this cause differ significantly from an instance in which an owner who is also an operator attempts to recover uninsured or underinsured benefits from an insurer. In that instance, the insured owner and operator will have no coverage unless, as the owner and operator, the party regulates and controls the actual operation of the vehicle at the time of the accident.[2]

¶ 3 Here, the employer, not the employee, is the owner of the vehicle. Nevertheless, an employer who is an owner or operator may be at fault within the meaning of 36 O.S.2001 § 3636,[3] where a supervisor's instructions are so straightforward and clear on the faulty or negligent operation of a vehicle as to leave the employee with the impression that only such operation is appropriate. In such a situation, the employer may be considered to be responsible for the personal physical management of the vehicle.

WINCHESTER, J., dissenting, with whom OPALA, V.C.J., and HARGRAVE, J., join:

¶ 1 Sometimes legal reasoning becomes so convoluted when applying marginally applicable cases in the construction of statutes that the end result bears no resemblance to the apparent intent of the statute. I believe that is true in this case. *Uptegraft v. Home Ins. Co.*, 1983 OK 41, ¶ 6, 662 P.2d 681, 683–684 states: "The purpose of an uninsured motorist provision in an insurance contract is to protect the insured from the effects of personal injury resulting from an accident with another motorist who carries no insurance or is underinsured." At the risk of oversimplifying, who is the uninsured/underinsured motorist? The plaintiff had been the only motorist, and at the time of his accident, he was not a motorist.

¶ 2 The truck was parked and the plaintiff was working alone in a raised bucket mounted on the back of the truck when he received severe electrical shock because the bucket contacted a live electrical line. The plaintiff properly recovered workers compensation benefits. But he now sues for uninsured motorist benefits. Clearly the truck did not contribute to his injuries. It was his operation of the bucket that caused his injury, independent of the truck it was mounted on.

¶ 3 I would answer, "No," to both the federal certified questions.

1. Title 36 O.S.2001 § 3636 provides in pertinent part:
   "A. No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued, delivered, renewed, or extended in this state with respect to a motor vehicle registered or principally garaged in this state unless the policy includes the coverage described in subsection B of this section.
   B. The policy referred to in subsection A of this section shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom...."

2. *Safeco Ins. Co. of America v. Sanders*, 1990 OK 129, ¶ 15, 803 P.2d 688. [The Legislature's use of the phrase, "uninsured motorist" implies an intent that the injury be connected to a motorist's use of a vehicle.].

3. Title 36 O.S.2001 § 3636, see note 1, supra.