2006 OK CIV APP 19

**Humphrey LAMFU, Plaintiff/Appellant,**

v.

**GUIDEONE INSURANCE COMPANY, Defendant/Appellee.**

No. 101,541.

Court of Civil Appeals of Oklahoma, Division No. 3.

Sept. 9, 2005.

Rehearing Denied Oct. 21, 2005.

Certiorari Denied Jan. 30, 2006.

Jeff Stites, Law Office of Jeff Stites, P.L.L.C., Tulsa, OK, for Plaintiff/Appellant.

Mark A. Warman, Wilkerson, Wassall & Warman, Tulsa, OK, for Defendant/Appellee.

Opinion by LARRY JOPLIN, Presiding Judge.

¶1 Plaintiff/Appellant Humphrey Lamfu (Plaintiff/Insured) seeks review of the trial court's order granting summary judgment on motion of Defendant GuideOne Insurance Company (Defendant/Insurer). In this appeal, Plaintiff asserts the trial court erred as a matter of fact and law. Having reviewed the record, we affirm the order of the trial court granting summary judgment in favor of Defendant.

¶2 On September 5, 1997, Plaintiff purchased a contract for insurance coverage that included $10,000 of UM coverage from Defendant GuideOne. On September 22, 1997, Plaintiff was involved in an automobile collision with Michelle Cato (Cato) who had $10,000 of liability insurance. As a result, Plaintiff incurred $4,202.40 of medical bills.

¶3 On February 3, 1999, Plaintiff made a claim for $10,000.00 in UM benefits, alleging he sustained $25,000.00 in damages, consisting of $4,209.40 in medical bills and $20,790.40 in pain, suffering and disability. In support of the claim, Plaintiff provided Defendant with a damages summary and a medical bills summary.

¶4 Defendant valued the claim at $8,209.40, less than tortfeasor's liability limits; but invited submission of additional information, twice requesting Plaintiff sign and return wage and medical authorization forms. Plaintiff notified Defendant that based upon *Burch v. Allstate,* 1998 OK 129, 977 P.2d 1057, he intended to proceed only against Defendant and provided no further documentation but did give recorded and sworn statements. Defendant's evaluation of Plaintiff's damages remained the same.

¶ 5 Plaintiff notified Defendant that he would accept Defendant's evaluation of $8,209.40 and demanded payment of that amount. Defendant refused to pay and the statute of limitations ran on the tortfeasor. Plaintiff sued Defendant and during litigation Plaintiff *stipulated* to his acceptance of Defendant's valuation of his claim that he would present no further evidence regarding damages. On competing motions for summary judgment, the trial court granted Defendant's motion for summary judgment and denied Plaintiff's.

¶ 6 Plaintiff contends the trial court erred because Plaintiff invoked UM coverage by making a "claim" that exceeded the liability coverage, so Defendant was obligated to pay the undisputed amount. Further, argues Plaintiff that because he accepted Defendant's claim value, he no longer was required to present proof of damages. Defendant, on the other hand, contends that the trial court correctly determined that Plaintiff failed to establish the conditions necessary to invoke UM coverage, specifically that Plaintiff failed to establish the tortfeasor's uninsured motorist status.

¶ 7 "An appellate court tests a trial court's summary judgment grant by a *de novo* review standard.... Although factual matters are considered in ruling on a summary judgment motion, the ultimate decision turns on the purely legal determination of whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions.... An appellate court, like a trial court, scrutinizes the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact, and all inferences and conclusions to be drawn from the evidentiary materials must be viewed in the light most favorable to the non-moving party.... In such a *de novo* review the appellate court engages in a plenary, independent and non-deferential re-examination of the trial court's ruling." *Head v. McCracken,* 2004 OK 84, ¶ 3, 102 P.3d 670, 674. (Citations omitted.)

## Uninsured Motor Vehicle

¶ 8 "The purpose of our uninsured motorist statute is to assure insurance coverage for the protection of the insured from the effects of personal injury *caused by* a motorist who either carries no insurance or has inadequate coverage. Accordingly, ... bodily injury damages ... *must arise out of ... an uninsured motor vehicle." Gates v. Eller,* 2001 OK 38, ¶ 11, 22 P.3d 1215,1218. (Emphasis added.)

### a. Definition

¶ 9 The definition of "uninsured motor vehicle" includes a vehicle covered by liability insurance but "where the liability limits are less than the amount of the claim...." *Gates,* ¶ 11 at 1218. (Emphasis added.) This definition is consistent with the Oklahoma statutes:

> C. For the purposes of this coverage the term "uninsured motor vehicle" shall ... include an insured motor vehicle, the liability limits of which are less than the amount of the claim of the person or persons making such claim....

36 O.S.1981 § 3636(C). "[I]nsurance policies are issued pursuant to statutes, and the provisions of those statutes are treated as though they were written into the policy." *Graham v. Travelers Ins. Co.,* 2002 OK 95, ¶ 17, 61 P.3d 225, 229. In the present case, the above statutory provision defining uninsured motor vehicle is essentially written into the policy language:

> C. "Uninsured motor vehicle" means a land motor vehicle ... (2) to which a bodily injury liability ... policy applies at the time of the accident but its limit for bodily injury liability is less than the amount of the claim of the person or persons making such claim....

Policy Provision Part C—Uninsured Motorist Coverage Section (C)(2).

### b. Burden of Proof

¶ 10 It is apparent that the amount of damages is inextricably intertwined, under the facts of this case, with the definition of an "uninsured motor vehicle." The burden of proving the uninsured status of a motor vehicle and thus, inherently in this case, the amount of damages, falls upon Plaintiff: "Our uninsured motorist statute imposes

*upon an injured insured* seeking to recover uninsured motorist insurance benefits the burden of proving the uninsured status of the tortfeasor's motor vehicle." *Gates*, ¶ 12 at 1218. (Emphasis added.) To do so, it is *not* necessary for the insured to obtain an adjudication of damages against the tortfeasor before proceeding directly against the UM carrier. *Hartford Ins. Company v. Dyer*, 2002 OK CIV APP 126, ¶ 21, 61 P.3d 912, 916; *Burch v. Allstate Ins. Company*, 1998 OK 129, ¶ 18, 977 P.2d 1057, 1065. In the present case, Plaintiff chose to proceed directly against Defendant.

### c. Conditions of UM Coverage

¶ 11 In *Ply v. National Union Fire Ins. Company*, 2003 OK 97, ¶ 8, 81 P.3d 643, 647, ¶ 8, the Court held:

> Our decisional law teaches that § 3636 mandates UM coverage where: 1) the injured person is an insured under the UM provisions of a policy; 2) the injury to the insured has been caused by an accident; 3) the injury to the insured has arisen out of the 'ownership, maintenance or use' of a motor vehicle; and 4) the injured insured is 'legally entitled to recover damages from the owner or operator of the uninsured motor vehicle.' These four elements of an UM claim are determined from the facts and circumstances of each claim. (Citations omitted.)

¶ 12 In the Oklahoma uninsured motorist statute, 36 O.S. § 3636, "[t]he words 'legally entitled to recover' ... mean that the insured must be able to establish fault on the part of the uninsured motorist which gives rise to damages and prove the extent of those damages." *Uptegraft v. Home Insurance Company*, 1983 OK 41, ¶ 9, 662 P.2d 681, 685. While the parties cite, and we find, no Oklahoma decision addressing the scope of the word "claim" as used in § 3636, another court has held, under statutes similar to 36 O.S. § 3636—governing proofs of claim, offers of settlement and attorney fees in insurance litigation where an insured's recovery ultimately exceeds the insurer's settlement offer—that a UM insured must assure "that the insurer receive sufficient facts which fully apprise the insurer that the own-

er or operator of the other vehicle involved in the accident was uninsured or underinsured, that he was at fault, that such fault gave rise to damages and establish the extent of those damages." *See e.g., Hart v. Allstate Ins. Company*, 437 So.2d 823, 828 (La.1983).

¶ 13 In the present case, such a construction of the word "claim" to require some proof in support of the claimed extent of damages is clearly consistent with a prior decision of the Oklahoma Supreme Court recognizing that a claimant under an accidental death insurance policy must present "proof ... necessary to establish a *prima facie* case" in order "to provide the insurance company with information from which it may intelligently arrive at a decision of its rights and liabilities and to enable it to decide whether it shall pay the amount of the policy to the one claiming it." *The John Hancock Mutual Life Ins. Company v. Highley*, 1968 OK 117, 445 P.2d 241, 246, 248. In order to trigger the obligation to pay UM benefits under § 3636, we therefore hold the "claim" must be supported by evidence establishing a *prima facie* right to recover under the UM provisions of the policy, and that the bare allegation of the existence of unliquidated damages for pain and suffering is simply insufficient.

¶ 14 Under the facts of this case, it is undisputed that Plaintiff is an injured insured; his injuries were caused by an accident; the accident involved motor vehicles; and Plaintiff could have recovered from Cato due to breach of duty, causation and damages. But, the uninsured status of the tortfeasor's vehicle, is also one of the "... *conditions of the insurer's promise*" regarding UM coverage. *Uptegraft*, ¶ 7 at 685. (Emphasis added.) The uninsured status of the tortfeasor, is thus an element to be included in the general rule that an "injured insured must demonstrate that the *preconditions* for loss under the uninsured motorist coverage exist before he or she can recover under the primary uninsured motorist coverage." *Gates*, ¶ 12 at 1219.

### d. Damages/ Uninsured Status Condition

¶ 15 The uninsured status of Cato under the facts present, depends upon the amount of Plaintiff's damages relative to

Cato's liability limits. Plaintiff *accepted* Defendant's valuation of his damages although it was *less than* Cato's liability limits. Nonetheless, we examine the damage element of UM claims.

¶ 16 The UM contractual language provides that the carrier "will pay *compensatory damages* which you are legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of *'bodily injury.'* " Part C—Uninsured Motorist Coverage, Section A. In Oklahoma, compensatory bodily injury damages include lost past wages, pain and suffering, physical impairment, disability, disfigurement, expected future medical expenses, and a loss of future earnings. *See Propst v. Alexander,* 1995 OK 57, ¶ 3, 898 P.2d 141, 143, n. 2.

¶ 17 In regard to the method by which an injured insured is to demonstrate damages to obtain UM coverage, the policy provides, in part, that a "person seeking Uninsured Motorist Coverage must also provide ... [the carrier with] written [d]ocumentation of economic losses, including copies of medical bills; and Authorization ... for us to obtain reports from all employers and medical providers." Part C—Uninsured Motorist Coverage—Additional Duties(2)(a); *See also* Part E—Duties After an Accident or Loss. In the present case, the Plaintiff failed to provided such documentation.

¶ 18 After investigation and evaluation, the insurer may place a value on the amount of damages sustained by its insured, who then may accept or dispute that amount. In the present case, Plaintiff accepted Defendant's valuation of damages, sued for an amount less than the liability limits, and stipulated that "he will present no other evidence."

¶ 19 Defendant's valuation of Plaintiff's damages at $8,209.40 was *not* an offer of payment to Plaintiff but rather, was the *basis for denial* of UM coverage. In failing to dispute this amount, Plaintiff conceded that his damages were less than Cato's liability coverage and precluded satisfying the condition that Cato's vehicle was of uninsured status.

### e. Statutory Interpretation

¶ 20 Accepting Plaintiff's argument that 36 O.S. § 3636(C) should be interpreted to allow

a claim of damages to obligate UM carriers can lead to absurd results that thwart the obvious legislative purpose of the statute.

In the interpretation of statutes, courts do not limit their consideration to a single word or phrase in isolation to attempt to determine their meaning, but construe together the various provisions of relevant legislative enactments to ascertain and give effect to the legislature's intention and will, and attempt to avoid unnatural and absurd consequences.

*Edmondson v. Pearce,* 2004 OK 23, ¶ 69, 91 P.3d 605, 636. Thus, we cannot accept Plaintiff's statutory interpretation.

### f. Statute of Limitations / Subrogation

¶ 21 Plaintiff further contends that because the statute of limitations against Cato ran, Cato became an *uninsured* driver. However, "... an insured motor vehicle does not become an uninsured motor vehicle simply because the insured allows the statute of limitation to expire causing the tortfeasor's liability insurance to become unavailable." *Gates,* ¶ 15 at 1219.

### CONCLUSION

¶ 22 We find that the phrase in § 3636 defining an uninsured motor vehicle as one with liability limits which are less than the amount of the claim, is to be interpreted to mean a claim reasonably supported by evidence of the actual losses sustained, not just a conclusory allegation. Additionally, when the amount of damages sustained are stipulated to be less than the liability limits of the tortfeasor, the condition of establishing the uninsured status of the tortfeasor is not satisfied. Based upon the conclusions we have reached, we do not find it necessary to address subrogation issues.

¶ 23 Upon our *de novo* review, we find the trial court's order is in accord with the law and is AFFIRMED.

HANSEN, J., and BUETTNER, C.J., concur.